# EXHIBIT F

## Exhibit F

*Bartolini v. Abbott Laboratories, Inc* . - Pleadings, Process and Orders

| Date | Description | Page |
|------|-------------|------|
| **Circuit Court of St. Clair County -- No. 10-L-651** | | |
| December 15, 2010 | Summons | F1 |
| December 15, 2010 | Original Complaint | F3 |
| March 28, 2011 | Order Granting Plaintiffs' Motion for Leave to Amend and File the Plaintiffs' First Amended Complaint | F20 |
| March 28, 2011 | Plaintiffs' First Amended Complaint | F25 |
| June 27, 2011 | Order Admitting Douglas A. Daniels, Robert Salim, Kenneth T. Fibich, Dino S. Sangiamo, and Stephen E. Marshall to practice *pro hac vice* | F53 |
| June 28, 2011 | Order Denying Abbott's Motion to Transfer Venue | F54 |
| July 18, 2011 | Order Setting Status Conference | F55 |
| July 20, 2011 | Order Granting Motion for Leave of Jason C. Rose to Appear *Pro Hac Vice* | F56 |
| September 20, 2011 | Order Granting Motion for Leave of Michael B. MacWilliams to Appear *Pro Hac Vice* | F57 |
| **Fifth District Appellate Court -- No. 5-11-0309** | | |
| July 25, 2011 | Abbott's Petition for Leave to Appeal | F58 |
| July 25, 2011 | Docketing Statement | F144 |
| August 17, 2011 | Order Granting Plaintiffs' Motion for Extension of Time in Which to File an Answer to Defendant's Petition for Leave to Appeal | F150 |
| October 7, 2011 | Order Granting Abbott's Petition for Leave to Appeal | F151 |
| October 27, 2011 | Order Granting Abbott's Motion for Extension of Time to File Brief | F152 |
| December 9, 2011 | Order Granting Abbott's Motion for Leave of Stephen E. Marshall to Appear *Pro Hac Vice* | F153 |
| December 21, 2011 | Order Granting Plaintiffs' Motion for Extension of Time to File Brief | F154 |

# CIRCUIT COURT FOR THE 20TH JUDICIAL CIRCUIT

State of Illinois                )
County of St. Clair              )  S.S.

Case Number _____ 10-L- 651

Amount Claimed _____

[REDACTED]                    VS    ABBOTT LABORATORIES, INC.

Plaintiff(s)                                              Defendant(s)

Classification Prefix 02 _____ Code L _____ Nature of Action _____ Code _____

Pltf. Atty. CHRISTOPHER CUETO _____ Code _____
Address 7110 WEST MAIN STREET
City BELLEVILLE, IL 62223 _____ Phone 618-277-1554
Add. Pltf. Atty. _____ Code _____

### SUMMONS COPY
To the above named defendant(s)......:

**TO THE SHERIFF: SERVE THIS DEFENDANT AT:**

NAME REGISTERED AGENT OF ABBOTT LABORATORIES

CT CORPORATION SYSTEM

ADDRESS 208 SOUTH LASALLE STREET

CITY & STATE CHICAGO, IL 60604

☐ A. You are hereby summoned and required to appear before this court at
(court location) _____ at _____ M. On _____ 20____
to answer the complaint in this case, a copy of which is hereto attached. If you fail to do so, a judgment by default may
be taken against you for the relief asked in the complaint.

☒ B. You are summoned and required to file an answer to the complaint in this case, a copy of which is hereto
attached, or otherwise file your appearance, in the office of the clerk of this court within 30 days after service of this
summons, exclusive of the day of service. If you fail to do so, judgment of decree by default may be taken against you
for the relief prayed in the complaint.

TO THE OFFICER:
This summons must be returned by the officer or other person to whom it was given for service, with
indorsement thereon of service and fees if any, immediately after service. In the event that paragraph A of this
summons is applicable this summons may not be served less than three days before the day of appearance. If service
cannot be made, this summons shall be returned so indorsed.

This summons may not be served later than 30 days after its date.

WITNESS, ____ 1 2 - 1 5 ____ 20 10

_____
Clerk of Court

## SEAL

BY DEPUTY: _____

DATE OF SERVICE: _____ 20____
(To be inserted by officer on copy left with defendant
or other person)

**NOTICE TO DEFENDANT IN SMALL CLAIMS UNDER $15,000- - -SEE REVERSE SIDE**     F1 CC-MR-1

## NOTICE TO DEFENDANTS (Pursuant to Supreme Court Rule)

In a civil action for money (under $15,000) in which the summons requires your appearance on a specified day, you may enter your appearance as follows:

1. You may enter your appearance prior to the time specified in the summons by filing a written appearance, answer or motion in person or by attorney at the office of the Circuit Clerk, #10 Public Square, P.O. Box 8415, Belleville, Illinois 62222-8415.

2. You may enter your appearance at the time and place specified in the summons by making your case known to the Judge when your case is called.

When you appear in Court, the Judge will require you to enter your appearance in writing, if you have not already done so. Your written appearance, answer, or motion shall state with particularity the address where service of notice or papers may be made upon you or an attorney representing you.

Your case will be heard on the date set forth in the summons unless otherwise ordered by the Court. Only the Court can make this exception. Do not call upon the Court Clerk or the Sheriff's office if you feel you will be unable to be present at the time and place specified. Continuances can be granted only on the day set forth in the summons, and then only for good cause shown. You, or someone representing you, MUST APPEAR IN PERSON at the specified time and place and make such a request.

If you owe and desire to pay the claim of the plaintiff before the court date on the summons, notify the plaintiff or his attorney of your desire to do so. Request that he appear at the time specified and ask for the dismissal of the suit against you. Do not make such a request at the Court Clerk or the Sheriff, as only the Judge can dismiss a case, and even then it is with a person who must be entered upon Court.

F2



IN THE CIRCUIT COURT
TWENTIETH JUDICIAL CIRCUIT
ST. CLAIR COUNTY, ILLINOIS

H████ B███████ a minor, by STACY )
BARTOLINI, individually as parent and next )
friend of H███ B█████; AMBERLEY )
BARNES, an incapacitated adult, by LAURA )
DIANE BARNES, individually as parent and )
next friend of Amberley Barnes; P███████ )
B███████, a minor, by SAMANTHA )
BRYANT, individually as parent and next )
friend of P████ B████, S█████ C████████, )
a minor, by JENNIFER JANECEK, )
individually as parent and next friend of S███ )
C███████, T████ G████, a minor, by )
MICHAEL GATES, individually as parent and )
next friend of T███ G████, B█████████ )
H████████, a minor, by KRISTA KAYE )
HOWARD, individually as parent and next )
friend of B██████ H██████, G████ )
J████████, a minor, by CHARLES H. )
JACKSON, II, individually as legal guardian )
and next friend of G████ J██████, S███████ )
K█████, a minor, by KAREN KELLY, )
individually as parent and next friend of S███ )
K███ J█████ L███████, a minor, by )
JARRI LEIGHTON AND CLAY LEIGHTON, )
individually as parents and next friends of )
J████ L██████; KIMBERLY MANDERY, an )
incapacitated adult, by RENAE DELL )
MANDERY, individually as parent and next )
friend of Kimberly Mandery; C███████ )
M██████████ a minor, by WHITNEY L. )
MIDDLEBROOK, individually as parent and )
next friend of O████ M█████████ DIANA )
MORRISON, an incapacitated adult, by )
HOLLY LYNN RUSSELL, individually as )
parent and next friend of Diana Morrison; )
C█████████ O██████, a minor, by PATRICIA )
RODRIGUEZ, individually as parent and next )
friend of C████████ O█████ D██████ P████, a )
minor, by LAURA PARR, individually as )
parent and next friend of D██████ P████ )
CHARLES PEEPLES, an incapacitated adult, )
by RHONDA PEEPLES, individually as parent )

Case No. 10 - L - 1651

FILED
ST. CLAIR COUNTY

DEC 1 5 2010

_Barbara F. Kelly_
22                    CIRCUIT CLERK

F3

and next friend of Charles Peeples; L████ )
P████████, a minor, by NANCY PROSENCE )
AND PAUL PROSENCE, individually as )
adoptive parents of L██ P███████; E████ )
S█████████, a minor, by LISA KAY )
SCHNARR, individually as parent and next )
friend of E████ S███████; A█████████ )
S█████████, a minor, by RACHEL )
SPRINGSTEEN AND PAUL SPRINGSTEEN, )
individually as parents and as next friends of )
A█████████ S█████████; L██████ W██████ )
M█████, a minor, by TOMIKO MOORE, )
individually as parent and next friend of L██████ )
W█████ M█████; J██████ W█████████, a )
minor, by MELISSA A. WILKINSON, )
individually as parent and next friend of J██████ )
W██████; R██████████ K██████ W█████, a )
minor, by GLORIA STAMPLEY, individually )
as guardian and next friend of R██████ K█████ )
W█████; G██████ V███████, a minor, by )
ANGELA VAUGHN and SCOTT VAUGHN, )
individually as parents and as next friends of )
G█████ V███████, )
)
          Plaintiffs, )
)
v. )
)
)
ABBOTT LABORATORIES, INC., )
)
          Defendant. )

## PLAINTIFFS' ORIGINAL COMPLAINT

    Come now PLAINTIFFS, minors, by their respective parent(s) and next friends of

Plaintiffs, by and through their undersigned attorneys, for their Complaint against Defendant

Abbott Laboratories, Inc. ("Abbott" or "Defendant") relative to its sale and distribution and

manufacturing of Depakote and Depakote ER products ("Depakote") in the United States, and in

support thereof would show the following:

-2-

F4

## PARTIES AND JURISDICTION

**Plaintiffs**

1.      Plaintiffs ██████████ a minor, by Stacy Bartolini, individually as parent and next friend of ███████████ are citizens and residents of Baltimore Maryland.  Plaintiff ██████████ was born on ████████████  His injuries were caused by his mother's ingestion of Depakote during pregnancy, and specifically, during her first trimester of pregnancy. Plaintiff ██████████ avers that Defendant's Depakote was defectively designed, inadequately tested, dangerous to human health and unborn, and lacked proper warnings as to the true danger associated with its use, and Plaintiffs suffered injury as a result of the mother's ingestion of Depakote.

2.      Plaintiffs Amberley Barnes, a mentally incapacitated adult, by Laura Diane Barnes individually as parent and next friend of Amberley Barnes, are citizens and residents of Alexandria, Kentucky.  Plaintiff Amberley Barnes was born on April 24, 1988.  Her injuries were caused by her mother's ingestion of Depakote during pregnancy, and specifically, during her first trimester of pregnancy.  Plaintiff Amberley Barnes avers that Defendant's Depakote was defectively designed, inadequately tested, dangerous to human health and unborn, and lacked proper warnings as to the true danger associated with its use, and Plaintiffs suffered injury as a result of the mother's ingestion of Depakote.

3.      Plaintiffs ██████████ a minor, by Samantha Bryant, individually as parent and next friend of ██████████, are citizens and residents of Oakdale, Louisiana.  Plaintiff ██████ ███████ was born on ██████████████ His injuries were caused by his mother's ingestion of Depakote during pregnancy, and specifically, during her first trimester of pregnancy.  Plaintiff Patrick Bryant avers that Defendant's Depakote was defectively designed, inadequately tested,

F5

designed, inadequately tested, dangerous to human health and unborn, and lacked proper warnings as to the true danger associated with its use, and Plaintiffs suffered injury as a result of the mother's ingestion of Depakote.

7.    Plaintiffs ███████████ a minor, by Charles H. Jackson, II, individually as guardian and next friend of ████████████ are citizens and residents of Oakland, Maine. Plaintiff ████████████ was born on ████████████. His injuries were caused by his mother's ingestion of Depakote during pregnancy, and specifically, during her first trimester of pregnancy. Plaintiff ████████████ avers that Defendant's Depakote was defectively designed, inadequately tested, dangerous to human health and unborn, and lacked proper warnings as to the true danger associated with its use, and Plaintiffs suffered injury as a result of the mother's ingestion of Depakote.

8.    Plaintiffs ████████, a minor, by Karen Kelly, individually as parent and next friend of ████████████ are citizens and residents of Houston, Texas. Plaintiff ████████ was born on ████████████ His injuries were caused by his mother's ingestion of Depakote during pregnancy, and specifically, during her first trimester of pregnancy. Plaintiff ████████ avers that Defendant's Depakote was defectively designed, inadequately tested, dangerous to human health and unborn, and lacked proper warnings as to the true danger associated with its use, and Plaintiffs suffered injury as a result of the mother's ingestion of Depakote.

9.    Plaintiffs ████████████ a minor, by Jarri Leighton and Clay Leighton, individually as parents and next friends of ████████████ are citizens and residents of Madison, South Dakota. Plaintiff Jessica Leighton was born on ████████████ Her injuries were caused by her mother's ingestion of Depakote during pregnancy, and specifically, during her first trimester of pregnancy. Plaintiff ████████████ avers that Defendant's

F6

Depakote was defectively designed, inadequately tested, dangerous to human health and unborn, and lacked proper warnings as to the true danger associated with its use, and Plaintiffs suffered injury as a result of the mother's ingestion of Depakote.

10. Plaintiffs Kimberly Mandery, a mentally incapacitated adult, by Renae Dell Mandery, individually as parent and next friend of Kimberly Mandery, are citizens and residents of Bullhead City, Arizona. Plaintiff Kimberly Mandery was born on April 7, 1992. Her injuries were caused by her mother's ingestion of Depakote during pregnancy, and specifically, during her first trimester of pregnancy. Plaintiff Kimberly Mandery avers that Defendant's Depakote was defectively designed, inadequately tested, dangerous to human health and unborn, and lacked proper warnings as to the true danger associated with its use, and Plaintiffs suffered injury as a result of the mother's ingestion of Depakote.

11. Plaintiffs ████████████ a minor, by Whitney L. Middlebrook, individually as parent and next friend of ████████████ are citizens and residents of Corryton, Tennessee. Plaintiff ████████████ was born on ████████████ His injuries were caused by his mother's ingestion of Depakote during pregnancy, and specifically, during her first trimester of pregnancy. Plaintiff ████████████ avers that Defendant's Depakote was defectively designed, inadequately tested, dangerous to human health and unborn, and lacked proper warnings as to the true danger associated with its use, and Plaintiffs suffered injury as a result of the mother's ingestion of Depakote.

12. Plaintiffs ████████████ a mentally incapacitated adult, by Holly Lynn Russell, individually as parent and next friend of ████████████ are citizens and residents of Carthage, Illinois. Plaintiff ████████████ was born on ████████████ Her injuries were caused by her mother's ingestion of Depakote during pregnancy, and specifically, during her first trimester of

-6-

F7

her first trimester of pregnancy. Plaintiff Charles Peeples avers that Defendant's Depakote was defectively designed, inadequately tested, dangerous to human health and unborn, and lacked proper warnings as to the true danger associated with its use, and Plaintiffs suffered injury as a result of the mother's ingestion of Depakote.

16.     Plaintiffs ████████████ a minor, by Nancy Prosence and Paul Prosence, individually as adoptive parents and next friends of ████████ are citizens and residents of North Salt Lake, Utah. Plaintiff ████████ was born on ████████ Her injuries were caused by her mother's ingestion of Depakote during pregnancy, and specifically, during her first trimester of pregnancy. Plaintiff ████████ avers that Defendant's Depakote was defectively designed, inadequately tested, dangerous to human health and unborn, and lacked proper warnings as to the true danger associated with its use, and Plaintiffs suffered injury as a result of the mother's ingestion of Depakote.

17.     Plaintiffs ████████ a minor, by Lisa Kay Schnarr, individually as parent and next friend of ████████ are citizens and residents of High Ridge, Missouri. Plaintiff ████ ████ was born on ████████ Her injuries were caused by her mother's ingestion of Depakote during pregnancy, and specifically, during her first trimester of pregnancy. Plaintiff ████████ avers that Defendant's Depakote was defectively designed, inadequately tested, dangerous to human health and unborn, and lacked proper warnings as to the true danger associated with its use, and Plaintiffs suffered injury as a result of the mother's ingestion of Depakote.

18.     Plaintiffs ████████ a minor, by Rachel Springsteen and Paul Springsteen, individually as parents and next friends of ████████ are citizens and residents of Greensboro, North Carolina. Plaintiff ████████ was born on ████

F8

Illinois. Plaintiff ████████████ was born on ██████████ His injuries were caused by his mother's ingestion of Depakote during pregnancy, and specifically, during her first trimester of pregnancy. Plaintiff ████████████ avers that Defendant's Depakote was defectively designed, inadequately tested, dangerous to human health and unborn, and lacked proper warnings as to the true danger associated with its use, and Plaintiffs suffered injury as a result of the mother's ingestion of Depakote.

22.    Plaintiffs ████████████ a minor, by Angela Vaughn and Scott Vaughn, individually as parents and next friends of ████████████ are citizens and residents of Stillwater, Oklahoma. Plaintiff ████████████ was born on ██████████ His injuries were caused by his mother's ingestion of Depakote during pregnancy, and specifically, during her first trimester of pregnancy. Plaintiff ████████████ avers that Defendant's Depakote was defectively designed, inadequately tested, dangerous to human health and unborn, and lacked proper warnings as to the true danger associated with its use, and Plaintiffs suffered injury as a result of the mother's ingestion of Depakote.

23.    Hereinafter, all injured children listed above will be collectively referred to as "Plaintiffs" or "Injured Children."

**Defendant**

24.    Defendant Abbott Laboratories, Inc. now is, and at all times relevant to this action was, a corporation organized and existing under the laws of the State of Illinois, with its principal place of business and its headquarters in the State of Illinois. Abbott may be served by delivering the citation to its registered agent for service, CT Corporation System, 208 So. LaSalle St., Suite 814, Chicago, IL, 60604. Abbott engaged in the business of designing, licensing, manufacturing, testing, advertising, warranting, distributing, supplying, selling, and

F9

introducing into the stream of commerce certain products known as Depakote and Depakote ER. Abbott sold its Depakote and Depakote ER products in this County and throughout the United States.

25.     Venue in this action is proper in this District pursuant to 735 ILCS 5/2-101 because the transaction or part of the transaction made the basis of this lawsuit occurred in this District.  One or more Plaintiffs suffered injuries in this State and in St. Clair County as a result of ingestion of or exposure to Depakote.  Defendant promoted and sold Depakote in this State and in St. Clair County.  Accordingly, venue is appropriate in this Court.

## UNDERLYING COMMON FACTS

26.     This lawsuit seeks compensation, damages and other relief for injuries Plaintiffs have suffered as a result of Abbott's anti-convulsant drug known as "Depakote".  Plaintiffs herein are properly joined pursuant to 735 ILCS 5/2-404.  As detailed in this complaint and is true in fact, the claims of each of the plaintiffs are logically related to each other. Plaintiffs' claims and the rights of relief arise out of the same transactions and series of transactions, including but not limited to, the Defendant's creating, developing, researching, studying, testing, licensing, manufacturing, promoting, advertising, warranting, marketing, selling and distributing the drug Depakote.  Furthermore, as alleged in this complaint, the Plaintiffs' claims and right to relief, if brought separately, present common questions of law or fact.

27.     Abbott is and at all relevant times has been engaged in the business of formulating, designing, manufacturing, licensing, testing, advertising, marketing, warranting, selling, distributing, and introducing into the stream of commerce a drug compound known as "divalproex sodium," "valproic acid," or "valproate," which Abbott has sometimes marketed

F10

under brand names such as "Depakote," "Depakote ER," "Depakene," and "Depacon." Regardless of the name under which Abbott marketed, sold, and distributed the drug, all of its forms were and are, for all purposes relevant to Plaintiffs' claims, chemically and pharmacologically identical. For purposes of this Complaint, these various forms and names of the drug compound will all be referred to by the common brand name, "Depakote."

28.    In approximately 1978, after Abbott received approval to market Depakote in the United States for treatment of certain forms of epilepsy, Abbott began marketing and placing Depakote into the stream of commerce throughout the United States. Depakote was promoted as an effective anti-epileptic drug ("AEDs").

29.    Depakote as formulated, designed, manufactured, licensed, tested, advertised, marketed, warranted, sold, distributed, and introduced into the stream of commerce by Abbott was and is defective and unreasonably dangerous for its intended use. In particular, the primary compound in Depakote – valproic acid – has been established to cause severe birth defects if taken during the first trimester of pregnancy, especially during the first twenty-eight days of gestation when neural tube closure and other critical mid-line formations are taking place in the cellular structure of the developing embryo.

30.    Among the "major congenital anamolies" (*i.e.*, birth defects) known to result directly from first-trimester exposure to Depakote are, either singly or in some combination with each other, spina bifida, cleft palate, cleft lip, limb and digital deformities, facial dysmorphism, mental developmental delays, genitourinary malformations, and heart defects.

31.    Medical researchers have confirmed that while Depakote is effective at controlling seizures, it is also riskier than other modern AEDs for women who are pregnant or who may become pregnant.

-12-

32.     These findings are not news to Abbott. Abbott has been aware of the birth defects associated with Depakote on early-term pregnancies on or before the date it began marketing and distributing Depakote in the United States. By the mid-1990's, scientific articles began to single out Depakote as among the most – if not the most – teratogenic of all AEDs. One study in 1995 reported an incidence rate of neural tube defects (such as spina bifida) *ten times greater* than with other AEDs. Another study found major congenital abnormalities in eleven percent of all infants exposed to Depakote during the earliest weeks of pregnancy. As pharmaceutical research and development progressed through the 1980's and 1990's, new and better AEDs were developed and approved, which proved as effective as Depakote at controlling most seizures in most epileptic patients, but which bore far less risk of causing birth defects. Despite this emerging scientific consensus, Abbott steadfastly refused to communicate the true nature and extent of the risk in its product labeling and warnings to physicians and consumers.

33.     Instead of working to warn doctors and women of childbearing age about the sharply heightened risks of ingesting Depakote during the early weeks of pregnancy, Abbott has consistently and systematically sought to minimize the risk and downplay the dangers in its product labeling of Depakote. Even now, when medical science has proven beyond all doubt that one out of every eight or ten babies whose mothers take Depakote during the first weeks of pregnancy will suffer some form of major congenital anomaly, Abbott refuses to state that risk on its product label, instead obliquely referring to a misleading statistic regarding a single specific defect. Until approximately 2006, Abbott did not even disclose that much of the danger.

34.     On the other hand, Abbott has worked aggressively on another aspect of its Depakote marketing: expanding the uses for which the drug is approved and marketed to doctors and patients. Commencing in the mid-1990's, Abbott implicitly and explicitly promoted

-13-

F12

Depakote to doctors, consumers, and the general public for unapproved, "off-label" uses, such as for treatment of mild depression, the depressive stage of bi-polar disorder, and chronic pain conditions such as migraine headaches. Depakote has pushed these off-label uses even though there are other common drugs which are as effective or more effective for treatment of those conditions, and which do not involve the risks of severe birth defects so prevalent with usage of Depakote. In a further effort to seize the brass ring of market share in the pharmaceutical industry, Abbott has worked aggressively to manipulate the regulatory system and gain approval for certain of these "off-label" uses, hoping to drape Depakote's riskier, less necessary uses with the cloak of governmental acceptance.

35.     Abbott has concealed and misled the doctors who prescribe Depakote and who monitor patients' drug regimen during pregnancy regarding the real risks of Depakote. Despite knowing the extremely high incidence rate of major congenital anomalies in babies born to women who take Depakote while pregnant (at least one study suggests a risk of up to *one in every five pregnancies*), Abbott continues to downplay the risks and refuses to provide adequate information in its drug labeling and package inserts regarding the real scope and severity of the dangers. Instead, Abbott insists on using muted and understated language to suggest that women of childbearing age weigh the "potential risk," when in fact the risks are severe, well-known to Abbott, and a scientific reality in excess of the injuries and incident rate reported on the product labeling.

36.     As has been established, Depakote's effects cause irreversible and devastating injuries to the developing embryo before the mother or her physician even have a chance to discover the pregnancy. In light of this fact, a label that simply announces vague cautions about "use during pregnancy" (which was all Abbott's Depakote labeling did prior to 2006) is totally

F13

inadequate.  Abbott knew and had a duty to warn doctors and patients that women who were taking Depakote should not get pregnant, and that women who might be pregnant or might become pregnant should not take Depakote.  This simple warning, commonplace among certain other manufacturers' drugs for other medical conditions, would have spared each of the Plaintiffs a lifetime of suffering and many millions of dollars in healthcare costs, supportive care, emotional and physical distress, and lost earning potential.

37.     Depakote was and is a defective product, unreasonably dangerous in light of its nature and intended use.  That defect existed when the product left Abbott's control and has been the proximate cause of injuries to Plaintiffs, whose injuries were caused by the use of Depakote in its intended or foreseeable manner or in the manner recommended by Abbott.  Abbott knew or should have known of the dangerous condition of its product, Depakote, but failed to adequately warn or instruct physicians and consumers of the risks, dangers, and proper uses of the drug.  Moreover, Abbott has breached its duty of reasonable care and its express and implied warranties, and has made affirmative misrepresentations as well as misrepresentations by omission, all in connection with the design, testing, manufacture, marketing, and/or labeling of Depakote.

38.     As a direct and proximate result of the acts and omissions of Defendant, the Injured Children have been born with spina bifida and neural tube defects, among other congenital malformations and birth defects.  The Injured Children continue to suffer permanent injury, pain, loss of normal life, and other non-economic damages

39.     As a direct and proximate result of the aforesaid acts of and/or omissions by the Defendant, Injured Children have:

        (a)     suffered severe and permanent injuries, which they will be forced to endure for the remainder of their lives;

-15-

(b)      suffered physical impairment and disfigurement;

(c)      suffered physical pain and suffering;

(d)      suffered mental pain and suffering;

(e)      suffered loss of enjoyment of life;

(f)      incurred substantial costs for medical care in the past, and will in reasonable medical probability incur substantial costs for medical care in the future;

(g)      suffered a loss of earnings and of future earning capacity; and,

(h)      incurred attorney's fees and expenses of litigation related to this action.

## EQUITABLE TOLLING OF APPLICABLE STATUTES OF LIMITATIONS

40.      Defendant failed to disclose a known defect and affirmatively misrepresented that Depakote was safe for its intended use.  Further, Defendant actively concealed the true risks associated with the use of Depakote.  Plaintiffs, the parents or guardians of the Injured Children, and/or the prescribing physicians had no knowledge that Defendant was engaged in the wrongdoing alleged herein.   Because of Defendant's fraudulent concealment of and misrepresentations regarding the true risks associated with Depakote, Plaintiffs, the parents or guardians of the Injured Children, and/or the prescribing physicians could not have reasonably discovered Defendant's wrongdoing at any time prior to the commencement of this action.

41.      Thus, because Defendant fraudulently concealed the defective nature of Depakote and the risks associated with its use, the running of any statute of limitations has been tolled.  Likewise, Defendant is estopped from relying on any statute of limitations.

-16-

F15

## COUNT I
**Strict Products Liability**

42.     Plaintiffs incorporate the allegations contained in the foregoing paragraphs as if fully set forth in the following paragraphs.

43.     It was the duty of Abbott to manufacture, test, market, advertise, label, distribute, and sell Depakote so that it was reasonably safe for its foreseeable use.

44.     At the time Depakote left the control of Abbott and was sold, it contained one or more conditions which rendered it defective and unreasonably dangerous in light of its nature and intended use.

45.     At all times, Depakote was used in the manner intended, recommended, or reasonably foreseeable by Abbott.  There were and are no other reasonable, secondary causes of Plaintiffs' injuries and damages other than the use of Depakote.

46.     The Depakote manufactured and/or supplied by Abbott and to which Plaintiffs were exposed was defective in design, manufacture, and/or formulation in that when it left the hands of Abbott, the foreseeable risks exceeded the benefits associated with the design and/or formulation of this product.

47.     The Depakote marketed, sold, and supplied by Abbott and to which Plaintiffs were exposed was defective in its marketing and labeling in that Abbott knew or should have known of its dangers and risks when taken during the first trimester of pregnancy, but failed to adequately warn or instruct physicians, consumers, and the general public of the nature and extent of those risks.

48.     The Depakote marketed, sold, and supplied by Abbott and to which  Plaintiffs were exposed was defective in its marketing and labeling in that Abbott knew of should have known of its dangers and risks when taken during the first trimester of pregnancy, as well as the

-17-

means for reducing or eliminating those dangers and risks, but failed to adequately warn or instruct physicians, consumers, and the general public of those means of reducing or eliminating the risks.

49.     The Depakote marketed, sold, and supplied by Abbott was defective in marketing in that Abbott represented to the consuming public that the product was safe and had qualities that it, in fact, did not have.

50.     The Depakote manufactured and/or supplied by Abbott was defective in design and formulation in that it was more dangerous than an ordinary consumer would expect when used in its intended or reasonably foreseeable manner.

51.     The Depakote manufactured and/or distributed by Abbott was defective in that Abbott failed to adequately test this product before placing it into the stream of commerce.

52.     As a direct and proximate result of the defective condition of Depakote as manufactured by Abbott, Plaintiffs suffered the injuries and damages described herein.

## COUNT II
### Negligence

53.     Plaintiffs incorporate the allegations contained in the foregoing paragraphs as if fully set forth in the following paragraphs.

54.     Abbott had a duty to exercise reasonable care in the design, manufacture, testing, sale, labeling and/or distribution of Depakote it placed into the stream of commerce, including a duty to assure that the product did not cause unreasonable or unnecessary injury.

55.     Abbott breached its duty of care to the Plaintiffs through its negligent acts and omissions.  Abbott did not exercise reasonable care in the warning, design, manufacture, sale, testing, labeling and/or distribution into the stream of commerce of the Depakote in that Abbott

-18-

    (d)     all other actual damages available under applicable law;

    (e)     pre- and post-judgment interest in the maximum amount allowed by law;

    (f)     future economic damages during the age of minority and beyond the age of 18, including lost wages of Plaintiffs;

    (g)     costs of this suit.

## PRAYER

WHEREFORE, Plaintiffs ask that Defendant Abbott Laboratories, Inc. be cited to appear and answer herein. That upon final trial, Plaintiffs have judgment against Defendant Abbott Laboratories, Inc. for actual damages, costs of court, and any other relief to which Plaintiffs may be entitled.

Respectfully submitted,

BY: _____

CHRISTOPHER CUETO, #6192248
MICHAEL GRAS, # 6303414
Law Office of Christopher Cueto, Ltd.
7110 West Main Street
Belleville, IL 62223
Phone: (618) 277-1554
Fax: (618) 277-0962

Robert L. Salim, Bar #11663
Attorney at Law
1901 Texas Street
Natchitoches, LA 71457
Phone: (318) 352-5999
Fax: (318) 352-5998

Jeffrey D. Meyer
Moulton & Meyer, L.L.P.
800 Taft
Houston, Texas 77019
Phone: (713) 353-6699
Fax: (713) 353-6698

F18

Ralph D. McBride
Douglas A. Daniels
Kathleen B. Jennings
Bracewell & Giuliani LLP
711 Louisiana Street, Suite 2300
Houston, Texas 77002-2781
Phone: (713) 223-2300
Fax: (713) 221-1212

Tommy Fibich
Fibich Hampton & Leebron LLP
1401 McKinney, Suite 1800
Five Houston Center
Houston, TX 77010
Phone: (713) 751-0025
Fax: (713) 751-0030

William M. Audet
Adel A. Nadji
Audet & Partners, LLP
221 Main Street, Suite 1460
San Francisco, CA 94105
Phone: (415) 568-2555
Fax: (415) 568-2556

**ATTORNEYS FOR PLAINTIFFS**

F19

IN THE CIRCUIT COURT
TWENTIETH JUDICIAL CIRCUIT
ST. CLAIR COUNTY, ILLINOIS

███████████████, a minor, by STACY       )
BARTOLINI, individually as parent and next friend of   )
████████ et al.,        )
                                                                  )
            Plaintiffs,        )
                                                                  )
v.                                                                )        Case No. 10 - L - 651
                                                                  )
ABBOTT LABORATORIES, INC.,        )
                                                                  )
            Defendant.        )

**ORDER**

For good cause shown, Plaintiffs' Motion for Leave to Amend and File the

Plaintiffs' First Amended Complaint is hereby GRANTED, *over objection*

*of Defendant.*

_____                    _____
*March 28, 2011*
DATE                                             HONORABLE ANDREW GLEESON

FILED
ST. CLAIR COUNTY
MAR 2 8 2011

MAR 2 9 2011

F20

**IN THE CIRCUIT COURT**
**TWENTIETH JUDICIAL CIRCUIT**
**ST. CLAIR COUNTY, ILLINOIS**

| | |
|---|---|
| ██████████, a minor, by STACY BARTOLINI, individually as parent and next friend of ███████, | ) ) ) ) |
| Plaintiffs, | ) |
| v. | ) |
| | ) Case No. 10 - L - 651 |
| ABBOTT LABORATORIES, INC., | ) ) |
| Defendant. | ) |

FILED
ST. CLAIR COUNTY

MAR 2 8 2011

*Kahald a. Dixon*
CIRCUIT CLERK

**MOTION FOR LEAVE TO AMEND PURSUANT TO**
**735 ILCS 5/2-616 AND TO FILE THE FIRST AMENDED COMPLAINT**

**COME NOW** the Plaintiffs, individually, and on behalf of all others similarly situated, by and through counsel, and in support of this Motion for Leave to Amend Pursuant to 735 ILCS 5/2-616 to file the First Amended Complaint, state as follows:

1. On December 15, 2010, Plaintiffs filed this action.

3. The Plaintiffs desire to join ███████████ a minor, by KELLY ALLEN, individually as parent and next friend of ██████; █████████ a minor, by SENQUETTA ANCRUM, individually as parent and next friend of ████████████ ██████ a minor, by HECTOR BAEZA AND GUADALUPE BAEZA, individually as legal guardians and next friends of ████████, ███████████ a minor, by GARY R. BARICKMAN AND MARY E. BARICKMAN, individually as parents and next friends of █████████; █████████ a minor, by BETHANY BUCK, individually as parent and next friend of █████████; █████████ a minor, by IRINA BURNETT, individually as parent and next friend of ████████ ████████ a minor, by

MAR 29 2011
F21

MICHELLE CASSIDY, individually as parent and next friend of ███████; ███████

███, a minor, by CAROLYN PEARSON, individually as legal guardian and next friend of

███████; ████████, a minor, by TONI FORD AND RANDY FORD, individually

as parents and next friends of ███████, ████████ and ████████ minors, by

CRYSTAL KIDD, individually as parent and next friend of ████████ and ████████

████████ a minor, by APRIL HARRIGAN, individually as parent and next

friend of ███████ ████████ a minor, by SINDY SALGADO, individually

as parent and next friend of ███████, ████████ a minor, by MARTHEE

SANSONE, individually as parent and next friend of ███████, ███████

████████ a minor, by ANGIE STEVENSON, individually as parent and next friend of

███████; ████████ a minor, by ROSEMARY R. STOERMANN

AND ROBERT STOERMANN, individually as parents and next friends of ████████

RYAN WAKEFIELD; ████████, a minor, by CHRISTINA ZUNIGA,

individually as parent and next friend of ████████ as Plaintiffs in this matter by filing

the First Amended Complaint attached hereto.

    4. The case is at a preliminary stage.

    5. Section 2-616(a) of the Code of Civil Procedure provides, in pertinent part, that "[a]t

any time before final judgment amendments may be allowed on just and reasonable terms,

introducing any party***."  735 ILCS 5/2-616(a) (West 2006).  Section 2-616(a) allows for

amendments that may enable the plaintiff to sustain the claim for which it was intended to be

brought, particularly where doing so does not prevent the defendant from making a defense.

    6. The Defendants will suffer no legal prejudice by allowing the filing of the First

Amended Complaint.

2

WHEREFORE, the Plaintiffs pray that the Court grant the filing of the Plaintiffs' First Amended Complaint.

Respectfully submitted,

BY: _____

CHRISTOPHER CUETO, #6192248
Law Office of Christopher Cueto, Ltd.
7110 West Main Street
Belleville, IL 62223
Phone:  (618) 277-1554
Fax:  (618) 277-0962

Robert L. Salim
Attorney at Law
1901 Texas Street
Natchitoches, LA 71457
Phone: (318) 352-5999
Fax: (318) 352-5998

Jeffrey D. Meyer
Moulton & Meyer, L.L.P.
800 Taft
Houston, Texas 77019
Phone:  (713) 353-6699

Ralph D. McBride
Douglas A. Daniels
Kathleen B. Jennings
Bracewell & Giuliani LLP
711 Louisiana Street, Suite 2300
Houston, Texas  77002-2781
Phone: (713) 223-2300

Tommy Fibich
Fibich Hampton & Leebron LLP
1401 McKinney, Suite 1800
Five Houston Center
Houston, TX  77010
Phone: (713) 751-0025

3

F23

William M. Audet
Adel A. Nadji
Audet & Partners, LLP
221 Main Street, Suite 1460
San Francisco, CA 94105
Phone: (415) 568-2555

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

    This is to certify that on the ___28th___ day of ___March___, 2011, a true and correct copy of the foregoing has been served upon counsel of record **via United States Postal Service**, sealed in an envelope with proper postage prepaid, addressed as follows:

Richard E. Boyle
James R. Garrison
BOYLE BRASHER LLC
5000 West Main Street
P.O. Box 23560
Belleville, IL 62223

Maria Wendler, legal secretary

4

F24

# IN THE CIRCUIT COURT
## TWENTIETH JUDICIAL CIRCUIT
### ST. CLAIR COUNTY, ILLINOIS

H██████ B█████████, a minor, by STACY )
BARTOLINI, individually as parent and next friend of )
H███ B██████; AMBERLEY BARNES, an )
incapacitated adult, by LAURA DIANE BARNES, )
individually as parent and next friend of Amberley )
Barnes; P█████ B███████, a minor, by SAMANTHA )
BRYANT, individually as parent and next friend of )
P█████ B█████; S██████ C██████████, a minor, by )
JENNIFER JANECEK, individually as parent and next )
friend of S███ C████████; T██████ G█████, a minor, by )
MICHAEL GATES, individually as parent and next friend )
of T████ G████; B█████ H█████████, a minor, by )
KRISTA KAYE HOWARD, individually as parent and )
next friend of B█████ H█████; G██████ J████████, a )
minor, by CHARLES H. JACKSON, II, individually as )
legal guardian and next friend of G██████ J██████; )
S████████ K████, a minor, by KAREN KELLY, )
individually as parent and next friend of S████ K████; )
J██████ L████████, a minor, by JARRI LEIGHTON )
AND CLAY LEIGHTON, individually as parents and )
next friends of J██████ L█████; KIMBERLY )
MANDERY, an incapacitated adult, by RENAE DELL )
MANDERY, individually as parent and next friend of )
Kimberly Mandery; C██████ M██████████, a minor, )
by WHITNEY L. MIDDLEBROOK, individually as )
parent and next friend of C███ M█████████; DIANA )
MORRISON, an incapacitated adult, by HOLLY LYNN )
RUSSELL, individually as parent and next friend of Diana )
Morrison; C██████████ O██████, a minor, by PATRICIA )
RODRIGUEZ, individually as parent and next friend of )
C██████ O█████; D████████ P█████, a minor, by LAURA )
PARR, individually as parent and next friend of D██████ )
P███; CHARLES PEEPLES, an incapacitated adult, by )
RHONDA PEEPLES, individually as parent and next )
friend of Charles Peeples; L█████ P█████████ a minor, )
by NANCY PROSENCE AND PAUL PROSENCE, )
individually as adoptive parents of L████ P███████; )
E██████ S████████, a minor, by LISA KAY SCHNARR, )
individually as parent and next friend of E█████ S████; )
A████████ D. S████████████, a minor, by RACHEL )
SPRINGSTEEN AND PAUL SPRINGSTEEN, )

Case No. 10 - L - 651



FILED
ST. CLAIR COUNTY
MAR 2 9 2011

MAR 2 9 2011

F25

individually as parents and as next friends of A█████ )
S███████, L████████ W█████-M█████, a minor, by )
TOMIKO MOORE, individually as parent and next friend )
of L███ W████-M████; J██████ W██████████, a )
minor, by MELISSA A. WILKINSON, individually as )
parent and next friend of J█████ W██████; R██████ )
K████ W█████, a minor, by GLORIA STAMPLEY, )
individually as guardian and next friend of R██████ )
K████ W█████; G██████ V████████, a minor, by )
ANGELA VAUGHN AND SCOTT VAUGHN, )
individually as parents and as next friends of G██████ )
V█████, E██████ A██████ a minor, by KELLY )
ALLEN, individually as parent and next friend of )
E██████ A████ A███████ A████████, a minor, by )
SENQUETTA ANCRUM, individually as parent and next )
friend of A██████ A██████; A██████ B███████, a minor, by )
HECTOR BAEZA AND GUADALUPE BAEZA, )
individually as legal guardians and next friends of A█████ )
B█████, B███████ B████████, a minor, by GARY R. )
BARICKMAN AND MARY E. BARICKMAN, )
individually as parents and next friends of B█████ )
B███████; A█████████ B██████ a minor, by BETHANY )
BUCK, individually as parent and next friend of A█████ )
B████, D███████ B███████, a minor, by IRINA )
BURNETT, individually as parent and next friend of )
D████ B██████; H█████ C██████, a minor, by )
MICHELLE CASSIDY, individually as parent and next )
friend of H████ C██████; J█████ D██████, a minor, by )
CAROLYN PEARSON, individually as legal guardian )
and next friend of J████ D██████ B███████ F█████, a )
minor, by TONI FORD AND RANDY FORD, )
individually as parents and next friends of B██████ F████ )
A█████████ K█████ and B███████ K████, minors, by )
CRYSTAL KIDD, individually as parent and next friend )
of A████ K████ and B█████ K████; A█████ K█████████, )
█████, a minor, by APRIL HARRIGAN, individually as )
parent and next friend of A████ K███████, █; O████ )
R████, a minor, by SINDY SALGADO, individually as )
parent and next friend of O█████ R████, A███████████ )
S███████ a minor, by MARTHEE SANSONE, )
individually as parent and next friend of A█████ )
S██████, D████████ S███████████ a minor, by ANGIE )
STEVENSON, individually as parent and next friend of )
D████ S███████; J█████ S████████, a minor, )
by ROSEMARY R. STOERMANN  AND ROBERT )
STOERMANN, individually as parents and next friends )

-2-

F26

of J██████ S████████; RYAN WAKEFIELD;          )
C████████████ Z████████, a minor, by CHRISTINA  )
ZUNIGA, individually as parent and next friend of )
C████████ Z████████                             )
                                                )
                    Plaintiffs,                 )
v.                                              )
                                                )
ABBOTT LABORATORIES, INC.,                      )
                                                )
                    Defendant.                  )

## PLAINTIFFS' FIRST AMENDED COMPLAINT

Come now PLAINTIFFS, minors, by their respective parent(s) and next friends of Plaintiffs, by and through their undersigned attorneys, for their First Amended Complaint against Defendant Abbott Laboratories, Inc. ("Abbott" or "Defendant") relative to its sale and distribution and manufacturing of Depakote and Depakote ER products ("Depakote") in the United States, and in support thereof would show the following:

## PARTIES AND JURISDICTION

**Plaintiffs**

1.      Plaintiffs H████ B████████, a minor, by Stacy Bartolini, individually as parent and next friend of H████ B████████, are citizens and residents of Baltimore Maryland. Plaintiff H████ B████████ was born on ████████████████. His injuries were caused by his mother's ingestion of Depakote during pregnancy, and specifically, during her first trimester of pregnancy. Plaintiff H████ B████████ avers that Defendant's Depakote was defectively designed, inadequately tested, dangerous to human health and unborn, and lacked proper warnings as to the true danger associated with its use, and Plaintiffs suffered injury as a result of the mother's ingestion of Depakote.

-3-

F27

2.      Plaintiffs Amberley Barnes, a mentally incapacitated adult, by Laura Diane Barnes individually as parent and next friend of Amberley Barnes, are citizens and residents of Alexandria, Kentucky.  Plaintiff Amberley Barnes was born on April 24, 1988.  Her injuries were caused by her mother's ingestion of Depakote during pregnancy, and specifically, during her first trimester of pregnancy.  Plaintiff Amberley Barnes avers that Defendant's Depakote was defectively designed, inadequately tested, dangerous to human health and unborn, and lacked proper warnings as to the true danger associated with its use, and Plaintiffs suffered injury as a result of the mother's ingestion of Depakote.

3.      Plaintiffs ████████, a minor, by Samantha Bryant, individually as parent and next friend of ████████ are citizens and residents of Oakdale, Louisiana.  Plaintiff ████ ██ was born on ████████ His injuries were caused by his mother's ingestion of Depakote during pregnancy, and specifically, during her first trimester of pregnancy.  Plaintiff ████████ avers that Defendant's Depakote was defectively designed, inadequately tested, dangerous to human health and unborn, and lacked proper warnings as to the true danger associated with its use, and Plaintiffs suffered injury as a result of the mother's ingestion of Depakote.

4.      Plaintiffs ████████ a minor, by Jennifer Janecek, individually as parent and next friend of ████████ are citizens and residents of Kansas City, Missouri.  Plaintiff ████████ was born on ████████ Her injuries were caused by her mother's ingestion of Depakote during pregnancy, and specifically, during her first trimester of pregnancy.  Plaintiff ████████ avers that Defendant's Depakote was defectively designed, inadequately tested, dangerous to human health and unborn, and lacked proper warnings as to the true danger

F28

associated with its use, and Plaintiffs suffered injury as a result of the mother's ingestion of Depakote.

5.    Plaintiffs ████████ a minor, by Michael Gates, individually as parent and next friend of ████████, are citizens and residents of Belleville, Illinois.  Plaintiff ████████ as born on ████████.  Plaintiff ████████ was prescribed Depakote in St. Clair County, Illinois, and ingested the drug Depakote in accordance with the prescribing instructions and suffered harm therefrom.  Plaintiff ████████ avers that Defendant's Depakote was defectively designed, inadequately tested, dangerous to human health and unborn, and lacked proper warnings as to the true danger associated with its use.

6.    Plaintiffs ████████ a minor, by Krista Kaye Howard, individually as parent and next friend of ████████, are citizens and residents of San Diego, California. Plaintiff ████████ was born on ████████.  His injuries were caused by his mother's ingestion of Depakote during pregnancy, and specifically, during her first trimester of pregnancy.  Plaintiff ████████ avers that Defendant's Depakote was defectively designed, inadequately tested, dangerous to human health and unborn, and lacked proper warnings as to the true danger associated with its use, and Plaintiffs suffered injury as a result of the mother's ingestion of Depakote.

7.    Plaintiffs ████████ a minor, by Charles H. Jackson, II, individually as guardian and next friend of ████████ are citizens and residents of Oakland, Maine. Plaintiff ████████ was born on ████████ His injuries were caused by his mother's ingestion of Depakote during pregnancy, and specifically, during her first trimester of pregnancy. Plaintiff ████████ avers that Defendant's Depakote was defectively designed, inadequately tested, dangerous to human health and unborn, and lacked proper warnings as to the

F29

true danger associated with its use, and Plaintiffs suffered injury as a result of the mother's ingestion of Depakote.

8.      Plaintiffs ████████ a minor, by Karen Kelly, individually as parent and next friend of ████████ are citizens and residents of Houston, Texas.  Plaintiff ████████ was born on ████████.  His injuries were caused by his mother's ingestion of Depakote during pregnancy, and specifically, during her first trimester of pregnancy.  Plaintiff ████████ avers that Defendant's Depakote was defectively designed, inadequately tested, dangerous to human health and unborn, and lacked proper warnings as to the true danger associated with its use, and Plaintiffs suffered injury as a result of the mother's ingestion of Depakote.

9.      Plaintiffs ████████, a minor, by Jarri Leighton and Clay Leighton, individually as parents and next friends of ████████ are citizens and residents of Madison, South Dakota.  Plaintiff ████████ was born on ████████ Her injuries were caused by her mother's ingestion of Depakote during pregnancy, and specifically, during her first trimester of pregnancy.  Plaintiff ████████ avers that Defendant's Depakote was defectively designed, inadequately tested, dangerous to human health and unborn, and lacked proper warnings as to the true danger associated with its use, and Plaintiffs suffered injury as a result of the mother's ingestion of Depakote.

10.     Plaintiffs Kimberly Mandery, a mentally incapacitated adult, by Renae Dell Mandery, individually as parent and next friend of Kimberly Mandery, are citizens and residents of Bullhead City, Arizona.  Plaintiff Kimberly Mandery was born on April 7, 1992.  Her injuries were caused by her mother's ingestion of Depakote during pregnancy, and specifically, during her first trimester of pregnancy.  Plaintiff Kimberly Mandery avers that Defendant's Depakote was defectively designed, inadequately tested, dangerous to human health and unborn, and

lacked proper warnings as to the true danger associated with its use, and Plaintiffs suffered injury as a result of the mother's ingestion of Depakote.

11.    Plaintiffs ███████████ a minor, by Whitney L. Middlebrook, individually as parent and next friend of ███████████ are citizens and residents of Corryton, Tennessee.  Plaintiff ███████████ was born on ███████████   His injuries were caused by his mother's ingestion of Depakote during pregnancy, and specifically, during her first trimester of pregnancy.  Plaintiff ███████████ avers that Defendant's Depakote was defectively designed, inadequately tested, dangerous to human health and unborn, and lacked proper warnings as to the true danger associated with its use, and Plaintiffs suffered injury as a result of the mother's ingestion of Depakote.

12.    Plaintiffs Diana Morrison, a mentally incapacitated adult, by Holly Lynn Russell, individually as parent and next friend of Diana Morrison, are citizens and residents of Carthage, Illinois.  Plaintiff Diana Morrison was born on July 19, 1982.  Her injuries were caused by her mother's ingestion of Depakote during pregnancy, and specifically, during her first trimester of pregnancy.  Plaintiff Diana Morrison avers that Defendant's Depakote was defectively designed, inadequately tested, dangerous to human health and unborn, and lacked proper warnings as to the true danger associated with its use, and Plaintiffs suffered injury as a result of the mother's ingestion of Depakote.

13.    Plaintiffs ███████████, a minor, by Patricia Rodriguez, individually as parent and next friend of ███████████, are citizens and residents of Pasadena, Texas.  Plaintiff ███████████ was born on ███████████   Her injuries were caused by her mother's ingestion of Depakote during pregnancy, and specifically, during her first trimester of pregnancy.  Plaintiff ███████████ avers that Defendant's Depakote was defectively designed,

F31

inadequately tested, dangerous to human health and unborn, and lacked proper warnings as to the true danger associated with its use, and Plaintiffs suffered injury as a result of the mother's ingestion of Depakote.

14.    Plaintiffs ██████ a minor, by Laura Parr, individually as parent and next friend of ████████ are citizens and residents of Del Mar, Maryland.  Plaintiff ████████ was born on ████████  His injuries were caused by his mother's ingestion of Depakote during pregnancy, and specifically, during her first trimester of pregnancy.  Plaintiff ████████ avers that Defendant's Depakote was defectively designed, inadequately tested, dangerous to human health and unborn, and lacked proper warnings as to the true danger associated with its use, and Plaintiffs suffered injury as a result of the mother's ingestion of Depakote.

15.    Plaintiffs Charles Peeples, a mentally incapacitated adult, by Rhonda Peeples, individually as parent and next friend of Charles Peeples, are citizens and residents of Branchville, South Carolina.  Plaintiff Charles Peeples was born on April 8, 1992.  His injuries were caused by his mother's ingestion of Depakote during pregnancy, and specifically, during her first trimester of pregnancy.  Plaintiff Charles Peeples avers that Defendant's Depakote was defectively designed, inadequately tested, dangerous to human health and unborn, and lacked proper warnings as to the true danger associated with its use, and Plaintiffs suffered injury as a result of the mother's ingestion of Depakote.

16.    Plaintiffs ██████ a minor, by Nancy Prosence and Paul Prosence, individually as adoptive parents and next friends of ████████e, are citizens and residents of North Salt Lake, Utah.  Plaintiff ████████was born on ████████Her injuries were caused by her mother's ingestion of Depakote during pregnancy, and specifically, during her first trimester of pregnancy.  Plaintiff ████████ avers that Defendant's Depakote was

-8-

defectively designed, inadequately tested, dangerous to human health and unborn, and lacked proper warnings as to the true danger associated with its use, and Plaintiffs suffered injury as a result of the mother's ingestion of Depakote.

17.     Plaintiffs ████████ a minor, by Lisa Kay Schnarr, individually as parent and next friend of ██████ are citizens and residents of High Ridge, Missouri.  Plaintiff ████████ █████ as born on ███████ Her injuries were caused by her mother's ingestion of Depakote during pregnancy, and specifically, during her first trimester of pregnancy.  Plaintiff ████████ avers that Defendant's Depakote was defectively designed, inadequately tested, dangerous to human health and unborn, and lacked proper warnings as to the true danger associated with its use, and Plaintiffs suffered injury as a result of the mother's ingestion of Depakote.

18.     Plaintiffs ██████████ a minor, by Rachel Springsteen and Paul Springsteen, individually as parents and next friends of ████████ are citizens and residents of Greensboro, North Carolina.  Plaintiff █████████ was born on ██████ ████ Her injuries were caused by her mother's ingestion of Depakote during pregnancy, and specifically, during her first trimester of pregnancy.  Plaintiff █████████ avers that Defendant's Depakote was defectively designed, inadequately tested, dangerous to human health and unborn, and lacked proper warnings as to the true danger associated with its use, and Plaintiffs suffered injury as a result of the mother's ingestion of Depakote.

19.     Plaintiffs ████████ a minor, by Tomiko Moore, individually as parent and next friend of ████████ are citizens and residents of Chesapeake, Virginia.  Plaintiff █████████ as born on ███████ Her injuries were caused by her mother's ingestion of Depakote during pregnancy, and specifically, during her first trimester

F33

of pregnancy. Plaintiff ███████████ avers that Defendant's Depakote was defectively designed, inadequately tested, dangerous to human health and unborn, and lacked proper warnings as to the true danger associated with its use, and Plaintiffs suffered injury as a result of the mother's ingestion of Depakote.

20. Plaintiffs ███████████ a minor, by Melissa A. Wilkinson, individually as parent and next friend of ███████████ are citizens and residents of Horseheads, New York. Plaintiff ███████on was born on ███████████. His injuries were caused by his mother's ingestion of Depakote during pregnancy, and specifically, during her first trimester of pregnancy. Plaintiff ███████████ avers that Defendant's Depakote was defectively designed, inadequately tested, dangerous to human health and unborn, and lacked proper warnings as to the true danger associated with its use, and Plaintiffs suffered injury as a result of the mother's ingestion of Depakote.

21. Plaintiffs ███████████n, a minor, by Gloria Stampley, individually as guardian and next friend of ███████████ are citizens and residents of Springfield, Illinois. Plaintiff ███████████ was born on ███████████ His injuries were caused by his mother's ingestion of Depakote during pregnancy, and specifically, during her first trimester of pregnancy. Plaintiff ███████████ avers that Defendant's Depakote was defectively designed, inadequately tested, dangerous to human health and unborn, and lacked proper warnings as to the true danger associated with its use, and Plaintiffs suffered injury as a result of the mother's ingestion of Depakote.

22. Plaintiffs ███████████ a minor, by Angela Vaughn and Scott Vaughn, individually as parents and next friends of ███████████ are citizens and residents of Stillwater, Oklahoma. Plaintiff ███████████ was born on ███████████ His injuries

-10-

F34

were caused by his mother's ingestion of Depakote during pregnancy, and specifically, during her first trimester of pregnancy. Plaintiff ██████████ avers that Defendant's Depakote was defectively designed, inadequately tested, dangerous to human health and unborn, and lacked proper warnings as to the true danger associated with its use, and Plaintiffs suffered injury as a result of the mother's ingestion of Depakote.

23.     Plaintiffs ██████████, a minor, by Kelly Allen, individually as parent and next friend of ██████████ are citizens and residents of Palm Bay, Florida.  Plaintiff ██████████ was born on ██████████ Her injuries were caused by her mother's ingestion of Depakote during pregnancy, and specifically, during her first trimester of pregnancy. Plaintiff ██████████ avers that Defendant's Depakote was defectively designed, inadequately tested, dangerous to human health and unborn, and lacked proper warnings as to the true danger associated with its use, and Plaintiffs suffered injury as a result of the mother's ingestion of Depakote.

24.     Plaintiffs ██████████ a minor, by Senquetta Ancrum, individually as parent and next friend of ██████████ are citizens and residents of Philadelphia, Pennsylvania. Plaintiff ██████████ was born on ██████████ Her injuries were caused by her mother's ingestion of Depakote during pregnancy, and specifically, during her first trimester of pregnancy. Plaintiff ██████████ avers that Defendant's Depakote was defectively designed, inadequately tested, dangerous to human health and unborn, and lacked proper warnings as to the true danger associated with its use, and Plaintiffs suffered injury as a result of the mother's ingestion of Depakote.

25.     Plaintiffs ██████████ minor, by Hector and Guadalupe Baeza, individually as legal guardians and next friends of ██████████ are citizens and residents of San Jacinto,

California.  Plaintiff ██████████ was born on ████████████.  His injuries were caused by his mother's ingestion of Depakote during pregnancy, and specifically, during the first trimester of pregnancy.  Plaintiff ████████████ avers that Defendant's Depakote was defectively designed, inadequately tested, dangerous to human health and unborn, and lacked proper warnings as to the true danger associated with its use, and Plaintiffs suffered injury as a result of the mother's ingestion of Depakote.

26.   Plaintiffs ██████████████ a minor, by Gary R. Barickman and Mary E. Barickman, individually as parents and next friends of ██████████ are citizens and residents of Meadville, Pennsylvania.  Plaintiff ████████████ was born on ████████████. Her injuries were caused by her mother's ingestion of Depakote during pregnancy, and specifically, during her first trimester of pregnancy.  Plaintiff ████████████ avers that Defendant's Depakote was defectively designed, inadequately tested, dangerous to human health and unborn, and lacked proper warnings as to the true danger associated with its use, and Plaintiffs suffered injury as a result of the mother's ingestion of Depakote.

27.   Plaintiffs ██████████ a minor, by Bethany Buck, individually as parent and next friend of ██████████ are citizens and residents of Jamestown, New York.  Plaintiff ██████████ was born on ██████████ Her injuries were caused by her mother's ingestion of Depakote during pregnancy, and specifically, during her first trimester of pregnancy.  Plaintiff ██████████ avers that Defendant's Depakote was defectively designed, inadequately tested, dangerous to human health and unborn, and lacked proper warnings as to the true danger associated with its use, and Plaintiffs suffered injury as a result of the mother's ingestion of Depakote.

F36

28.   Plaintiffs ███████████ a minor, by Irina Burnett, individually as parent and next friend of ████████, are citizens and residents of Greenville, South Carolina.  Plaintiff ███████was born on ████████████ His injuries were caused by his mother's ingestion of Depakote during pregnancy, and specifically, during her first trimester of pregnancy.  Plaintiff ██████████ avers that Defendant's Depakote was defectively designed, inadequately tested, dangerous to human health and unborn, and lacked proper warnings as to the true danger associated with its use, and Plaintiffs suffered injury as a result of the mother's ingestion of Depakote.

29.   Plaintiffs ██████████ a minor, by Michelle Cassidy, individually as parent and next friend of ██████████re citizens and residents of Tomball, Texas.   Plaintiff,███████ ██████was born on ████████████ Her injuries were caused by her mother's ingestion of Depakote during pregnancy, and specifically, during her first trimester of pregnancy.  Plaintiff ███████████ avers that Defendant's Depakote was defectively designed, inadequately tested, dangerous to human health and unborn, and lacked proper warnings as to the true danger associated with its use, and Plaintiffs suffered injury as a result of the mother's ingestion of Depakote.

30.   Plaintiffs ████████████ a minor, by Carolyn Pearson, individually as legal guardian and next friend of ████████, are citizens and residents of Springfield, Illinois.  Plaintiff ███████was born on ██████████. His injuries were caused by his mother's ingestion of Depakote.  Plaintiff██████████avers that Defendant's Depakote was defectively designed, inadequately tested, dangerous to human health and unborn, and lacked proper warnings as to the true danger associated with its use, and Plaintiffs suffered injury as a result of the mother's ingestion of Depakote.

F37

31.     Plaintiffs █████████ a minor, by Toni Ford and Randy Ford, individually as parents and next friends of ████████ are citizens and residents of Lugoff, South Carolina. Plaintiff ████████ was born on ████████ His injuries were caused by his mother's ingestion of Depakote during pregnancy, and specifically, during her first trimester of pregnancy. Plaintiff ████████ avers that Defendant's Depakote was defectively designed, inadequately tested, dangerous to human health and unborn, and lacked proper warnings as to the true danger associated with its use, and Plaintiffs suffered injury as a result of the mother's ingestion of Depakote.

32.     Plaintiffs █████████ and █████████ minors, by Crystal Kidd, individually as parent and next friend of ████████ and █████████ re citizens and residents of St. Albans, West Virginia.  Plaintiff ████████ was born on █████████ and █████████ was born on █████████ Their injuries were caused by the mother's ingestion of Depakote during pregnancy, and specifically, during the first trimester of pregnancy.  Plaintiffs ████████ d █████████ aver that Defendant's Depakote was defectively designed, inadequately tested, dangerous to human health and unborn, and lacked proper warnings as to the true danger associated with its use, and Plaintiffs suffered injury as a result of the mother's ingestion of Depakote.

33.     Plaintiffs █████████ a minor, by April Harrigan, individually as parent and next friend of █████████ are citizens and residents of Philadelphia, Pennsylvania. Plaintiff A██████████ was born on █████████ His injuries were caused by his mother's ingestion of Depakote during pregnancy, and specifically, during her first trimester of pregnancy.  Plaintiff █████████ avers that Defendant's Depakote was defectively designed, inadequately tested, dangerous to human health and unborn, and lacked proper

-14-

warnings as to the true danger associated with its use, and Plaintiffs suffered injury as a result of the mother's ingestion of Depakote.

34.     Plaintiffs ████████ a minor, by Sindy Salgado, individually as parent and next friend of ████████, are citizens and residents of Houston, Texas.  Plaintiff ████████ was born on ████████ His injuries were caused by his mother's ingestion of Depakote during pregnancy.  Plaintiff ████████ avers that Defendant's Depakote was defectively designed, inadequately tested, dangerous to human health and unborn, and lacked proper warnings as to the true danger associated with its use, and Plaintiffs suffered injury as a result of the mother's ingestion of Depakote.

35.     Plaintiffs ████████ a minor, by Marthee Sansone, individually as parent and next friend of ████████ are citizens and residents of Staunton, Illinois.  Plaintiff ████████ was born on ████████ His injuries were caused by his mother's ingestion of Depakote during pregnancy, and specifically, during her first trimester of pregnancy.  Plaintiff ████████ avers that Defendant's Depakote was defectively designed, inadequately tested, dangerous to human health and unborn, and lacked proper warnings as to the true danger associated with its use, and Plaintiffs suffered injury as a result of the mother's ingestion of Depakote.

36.     Plaintiffs ████████ a minor, by Angie Stevenson, individually as parent and next friend of ████████ are citizens and residents of Fort Wayne, Indiana.  Plaintiff ████████ was born on ████████ His injuries were caused by his mother's ingestion of Depakote during pregnancy, and specifically, during her first trimester of pregnancy.  Plaintiff ████████ avers that Defendant's Depakote was defectively designed, inadequately tested, dangerous to human health and unborn, and lacked proper

F39

warnings as to the true danger associated with its use, and Plaintiffs suffered injury as a result of the mother's ingestion of Depakote.

37.     Plaintiffs ██████████ a minor, by Rosemary R. Stoermann and Robert Stoermann, individually as parents and next friends of ██████████ are citizens and residents of Overland Park, Kansas.  Plaintiff ██████████ was born on N████████ His injuries were caused by his mother's ingestion of Depakote during pregnancy, and specifically, during her first trimester of pregnancy.  Plaintiff ██████████ avers that Defendant's Depakote was defectively designed, inadequately tested, dangerous to human health and unborn, and lacked proper warnings as to the true danger associated with its use, and Plaintiffs suffered injury as a result of the mother's ingestion of Depakote.

38.     Plaintiff Ryan Wakefield is a citizen and resident of Florence, Arizona.  Plaintiff Ryan Wakefield was born on March 30, 1991.  His injuries were caused by his mother's ingestion of Depakote during pregnancy, and specifically, during her first trimester of pregnancy.  Plaintiff Ryan Wakefield avers that Defendant's Depakote was defectively designed, inadequately tested, dangerous to human health and unborn, and lacked proper warnings as to the true danger associated with its use, and Plaintiff suffered injury as a result of the mother's ingestion of Depakote.

39.     Plaintiffs ██████████ a minor, by Christina Zuniga, individually as parent and next friend of ██████████ are citizens and residents of Fremont, Ohio.  Plaintiff ██████████ was born on A████████ His injuries were caused by his mother's ingestion of Depakote during pregnancy, and specifically, during the first trimester of pregnancy.  Plaintiff ██████████ avers that Defendant's Depakote was defectively designed, inadequately tested, dangerous to human health and unborn, and lacked proper warnings as to the

-16-

F40

true danger associated with its use, and Plaintiffs suffered injury as a result of the mother's ingestion of Depakote.

40.   Hereinafter, all injured children listed above will be collectively referred to as "Plaintiffs" or "Injured Children."

**Defendant**

41.   Defendant Abbott Laboratories, Inc. now is, and at all times relevant to this action was, a corporation organized and existing under the laws of the State of Illinois, with its principal place of business and its headquarters in the State of Illinois.   Abbott may be served by delivering the citation to its registered agent for service, CT Corporation System, 208 So. LaSalle St., Suite 814, Chicago, IL, 60604.   Abbott engaged in the business of designing, licensing, manufacturing, testing, advertising, warranting, distributing, supplying, selling, and introducing into the stream of commerce certain products known as Depakote and Depakote ER. Abbott sold its Depakote and Depakote ER products in this County and throughout the United States.

42.   Venue in this action is proper in this District pursuant to 735 ILCS 5/2-101 because the transaction or part of the transaction made the basis of this lawsuit occurred in this District.   One or more Plaintiffs suffered injuries in this State and in St. Clair County as a result of ingestion of or exposure to Depakote.   Defendant promoted and sold Depakote in this State and in St. Clair County.   Accordingly, venue is appropriate in this Court.


**UNDERLYING COMMON FACTS**

43.   This lawsuit seeks compensation, damages and other relief for injuries Plaintiffs have suffered as a result of Abbott's anti-convulsant drug known as "Depakote".   Plaintiffs herein

-17-

are properly joined pursuant to 735 ILCS 5/2-404.  As detailed in this complaint and is true in fact, the claims of each of the plaintiffs are logically related to each other. Plaintiffs' claims and the rights of relief arise out of the same transactions and series of transactions, including but not limited to, the Defendant's creating, developing, researching, studying, testing, licensing, manufacturing, promoting, advertising, warranting, marketing, selling and distributing the drug Depakote.  Furthermore, as alleged in this complaint, the Plaintiffs' claims and right to relief, if brought separately, present common questions of law or fact.

44.    Abbott is and at all relevant times has been engaged in the business of formulating, designing, manufacturing, licensing, testing, advertising, marketing, warranting, selling, distributing, and introducing into the stream of commerce a drug compound known as "divalproex sodium," "valproic acid," or "valproate," which Abbott has sometimes marketed under brand names such as "Depakote," "Depakote ER," "Depakene," and "Depacon." Regardless of the name under which Abbott marketed, sold, and distributed the drug, all of its forms were and are, for all purposes relevant to Plaintiffs' claims, chemically and pharmacologically identical.  For purposes of this Complaint, these various forms and names of the drug compound will all be referred to by the common brand name, "Depakote."

45.    In approximately 1978, after Abbott received approval to market Depakote in the United States for treatment of certain forms of epilepsy, Abbott began marketing and placing Depakote into the stream of commerce throughout the United States.  Depakote was promoted as an effective anti-epileptic drug ("AEDs").

46.    Depakote as formulated, designed, manufactured, licensed, tested, advertised, marketed, warranted, sold, distributed, and introduced into the stream of commerce by Abbott was and is defective and unreasonably dangerous for its intended use.  In particular, the primary

-18-

F42

compound in Depakote – valproic acid – has been established to cause severe birth defects if taken during the first trimester of pregnancy, especially during the first twenty-eight days of gestation when neural tube closure and other critical mid-line formations are taking place in the cellular structure of the developing embryo.

47.    Among the "major congenital anamolies" (*i.e.*, birth defects) known to result directly from first-trimester exposure to Depakote are, either singly or in some combination with each other, spina bifida, cleft palate, cleft lip, limb and digital deformities, facial dysmorphism, mental developmental delays, genitourinary malformations, and heart defects.

48.    Medical researchers have confirmed that while Depakote is effective at controlling seizures, it is also riskier than other modern AEDs for women who are pregnant or who may become pregnant.

49.    These findings are not news to Abbott.  Abbott has been aware of the birth defects associated with Depakote on early-term pregnancies on or before the date it began marketing and distributing Depakote in the United States.  By the mid-1990's, scientific articles began to single out Depakote as among the most – if not the most – teratogenic of all AEDs.  One study in 1995 reported an incidence rate of neural tube defects (such as spina bifida) *ten times greater* than with other AEDs.  Another study found major congenital abnormalities in eleven percent of all infants exposed to Depakote during the earliest weeks of pregnancy.  As pharmaceutical research and development progressed through the 1980's and 1990's, new and better AEDs were developed and approved, which proved as effective as Depakote at controlling most seizures in most epileptic patients, but which bore far less risk of causing birth defects.  Despite this emerging scientific consensus, Abbott steadfastly refused to communicate the true nature and extent of the risk in its product labeling and warnings to physicians and consumers.

F43

50.     Instead of working to warn doctors and women of childbearing age about the sharply heightened risks of ingesting Depakote during the early weeks of pregnancy, Abbott has consistently and systematically sought to minimize the risk and downplay the dangers in its product labeling of Depakote.  Even now, when medical science has proven beyond all doubt that one out of every eight or ten babies whose mothers take Depakote during the first weeks of pregnancy will suffer some form of major congenital anomaly, Abbott refuses to state that risk on its product label, instead obliquely referring to a misleading statistic regarding a single specific defect.  Until approximately 2006, Abbott did not even disclose that much of the danger.

51.     On the other hand, Abbott has worked aggressively on another aspect of its Depakote marketing:  expanding the uses for which the drug is approved and marketed to doctors and patients.   Commencing in the mid-1990's, Abbott implicitly and explicitly promoted Depakote to doctors, consumers, and the general public for unapproved, "off-label" uses, such as for treatment of mild depression, the depressive stage of bi-polar disorder, and chronic pain conditions such as migraine headaches.  Depakote has pushed these off-label uses even though there are other common drugs which are as effective or more effective for treatment of those conditions, and which do not involve the risks of severe birth defects so prevalent with usage of Depakote.  In a further effort to seize the brass ring of market share in the pharmaceutical industry, Abbott has worked aggressively to manipulate the regulatory system and gain approval for certain of these "off-label" uses, hoping to drape Depakote's riskier, less necessary uses with the cloak of governmental acceptance.

52.     Abbott has concealed and misled the doctors who prescribe Depakote and who monitor patients' drug regimen during pregnancy regarding the real risks of Depakote.  Despite knowing the extremely high incidence rate of major congenital anomalies in babies born to

-20-

women who take Depakote while pregnant (at least one study suggests a risk of up to *one in every five pregnancies*), Abbott continues to downplay the risks and refuses to provide adequate information in its drug labeling and package inserts regarding the real scope and severity of the dangers. Instead, Abbott insists on using muted and understated language to suggest that women of childbearing age weigh the "potential risk," when in fact the risks are severe, well-known to Abbott, and a scientific reality in excess of the injuries and incident rate reported on the product labeling.

53.     As has been established, Depakote's effects cause irreversible and devastating injuries to the developing embryo before the mother or her physician even have a chance to discover the pregnancy. In light of this fact, a label that simply announces vague cautions about "use during pregnancy" (which was all Abbott's Depakote labeling did prior to 2006) is totally inadequate. Abbott knew and had a duty to warn doctors and patients that women who were taking Depakote should not get pregnant, and that women who might be pregnant or might become pregnant should not take Depakote. This simple warning, commonplace among certain other manufacturers' drugs for other medical conditions, would have spared each of the Plaintiffs a lifetime of suffering and many millions of dollars in healthcare costs, supportive care, emotional and physical distress, and lost earning potential.

54.     Depakote was and is a defective product, unreasonably dangerous in light of its nature and intended use. That defect existed when the product left Abbott's control and has been the proximate cause of injuries to Plaintiffs, whose injuries were caused by the use of Depakote in its intended or foreseeable manner or in the manner recommended by Abbott. Abbott knew or should have known of the dangerous condition of its product, Depakote, but failed to adequately warn or instruct physicians and consumers of the risks, dangers, and proper uses of the drug.

Moreover, Abbott has breached its duty of reasonable care and its express and implied warranties, and has made affirmative misrepresentations as well as misrepresentations by omission, all in connection with the design, testing, manufacture, marketing, and/or labeling of Depakote.

55.     As a direct and proximate result of the acts and omissions of Defendant, the Injured Children have been born with spina bifida and neural tube defects, among other congenital malformations and birth defects.  The Injured Children continue to suffer permanent injury, pain, loss of normal life, and other non-economic damages

56.     As a direct and proximate result of the aforesaid acts of and/or omissions by the Defendant, Injured Children have:

    (a)     suffered severe and permanent injuries, which they will be forced to endure for the remainder of their lives;

    (b)     suffered physical impairment and disfigurement;

    (c)     suffered physical pain and suffering;

    (d)     suffered mental pain and suffering;

    (e)     suffered loss of enjoyment of life;

    (f)     incurred substantial costs for medical care in the past, and will in reasonable medical probability incur substantial costs for medical care in the future;

    (g)     suffered a loss of earnings and of future earning capacity; and,

    (h)     incurred attorney's fees and expenses of litigation related to this action.

## EQUITABLE TOLLING OF APPLICABLE STATUTES OF LIMITATIONS

57.     Defendant failed to disclose a known defect and affirmatively misrepresented that Depakote was safe for its intended use.  Further, Defendant actively concealed the true risks

associated with the use of Depakote. Plaintiffs, the parents or guardians of the Injured Children, and/or the prescribing physicians had no knowledge that Defendant was engaged in the wrongdoing alleged herein.   Because of Defendant's fraudulent concealment of and misrepresentations regarding the true risks associated with Depakote, Plaintiffs, the parents or guardians of the Injured Children, and/or the prescribing physicians could not have reasonably discovered Defendant's wrongdoing at any time prior to the commencement of this action.

58.    Thus, because Defendant fraudulently concealed the defective nature of Depakote and the risks associated with its use, the running of any statute of limitations has been tolled. Likewise, Defendant is estopped from relying on any statute of limitations.

## COUNT I
### Strict Products Liability

59.    Plaintiffs incorporate the allegations contained in the foregoing paragraphs as if fully set forth in the following paragraphs.

60.    It was the duty of Abbott to manufacture, test, market, advertise, label, distribute, and sell Depakote so that it was reasonably safe for its foreseeable use.

61.    At the time Depakote left the control of Abbott and was sold, it contained one or more conditions which rendered it defective and unreasonably dangerous in light of its nature and intended use.

62.    At all times, Depakote was used in the manner intended, recommended, or reasonably foreseeable by Abbott. There were and are no other reasonable, secondary causes of Plaintiffs' injuries and damages other than the use of Depakote.

63.    The Depakote manufactured and/or supplied by Abbott and to which Plaintiffs were exposed was defective in design, manufacture, and/or formulation in that when it left the

hands of Abbott, the foreseeable risks exceeded the benefits associated with the design and/or formulation of this product.

64.    The Depakote marketed, sold, and supplied by Abbott and to which Plaintiffs were exposed was defective in its marketing and labeling in that Abbott knew or should have known of its dangers and risks when taken during the first trimester of pregnancy, but failed to adequately warn or instruct physicians, consumers, and the general public of the nature and extent of those risks.

65.    The Depakote marketed, sold, and supplied by Abbott and to which  Plaintiffs were exposed was defective in its marketing and labeling in that Abbott knew of should have known of its dangers and risks when taken during the first trimester of pregnancy, as well as the means for reducing or eliminating those dangers and risks, but failed to adequately warn or instruct physicians, consumers, and the general public of those means of reducing or eliminating the risks.

66.    The Depakote marketed, sold, and supplied by Abbott was defective in marketing in that Abbott represented to the consuming public that the product was safe and had qualities that it, in fact, did not have.

67.    The Depakote manufactured and/or supplied by Abbott was defective in design and formulation in that it was more dangerous than an ordinary consumer would expect when used in its intended or reasonably foreseeable manner.

68.    The Depakote manufactured and/or distributed by Abbott was defective in that Abbott failed to adequately test this product before placing it into the stream of commerce.

69.    As a direct and proximate result of the defective condition of Depakote as manufactured by Abbott, Plaintiffs suffered the injuries and damages described herein.

-24-

## COUNT II
**Negligence**

70.    Plaintiffs incorporate the allegations contained in the foregoing paragraphs as if fully set forth in the following paragraphs.

71.    Abbott had a duty to exercise reasonable care in the design, manufacture, testing, sale, labeling and/or distribution of Depakote it placed into the stream of commerce, including a duty to assure that the product did not cause unreasonable or unnecessary injury.

72.    Abbott breached its duty of care to the Plaintiffs through its negligent acts and omissions.  Abbott did not exercise reasonable care in the warning, design, manufacture, sale, testing, labeling and/or distribution into the stream of commerce of the Depakote in that Abbott knew or should have known that Depakote could cause serious birth defects if taken by pregnant women.

73.    Abbott was negligent in the design, manufacture, sale, testing, and/or distribution of Depakote in that it: (a) failed to use due care in designing, formulating, developing, testing, and manufacturing Depakote so as to avoid or warn against the described risks to consumers who used Depakote; (b) placed an unsafe product into the stream of commerce; and (c) failed to discover or warn of the dangers associated with the use of Depakote despite having actual and/or constructive knowledge of such dangers.

74.    Abbott knew or should have known that Plaintiffs could foreseeably suffer injuries as a result of Abbott's failure to exercise ordinary care as described above.

75.    As a direct and proximate result of Abbott's negligence, Plaintiffs suffered the injuries and damages described herein.

F49

## DAMAGES

76.     Plaintiffs incorporate the allegations contained in the foregoing paragraphs as if fully set forth in the following paragraphs.

77.     The facts set out above demonstrate that, as a direct and proximate result of Abbott's conduct, Plaintiffs have suffered severe economic and non-economic losses and injuries for which they are entitled to recover damages, including without limitation the following:

(a)     disfigurement, conscious pain, suffering, mental anguish, mental suffering, embarrassment, shame, loss of enjoyment of life, loss of association, loss of earnings, loss of profits, loss of salary;

(b)     the reasonable and necessary expenses for the medical treatment rendered to plaintiffs in the past and that will be medically probable in the future;

(c)     compensation for Plaintiffs' permanent mental and physical impairment;

(d)     all other actual damages available under applicable law;

(e)     pre- and post-judgment interest in the maximum amount allowed by law;

(f)     future economic damages during the age of minority and beyond the age of 18, including lost wages of Plaintiffs;

(g)     costs of this suit.

## PRAYER

WHEREFORE, Plaintiffs ask that Defendant Abbott Laboratories, Inc. be cited to appear and answer herein. That upon final trial, Plaintiffs have judgment against Defendant Abbott Laboratories, Inc. for actual damages, costs of court, and any other relief to which Plaintiffs may be entitled.

F50

Respectfully submitted,

BY: _____

CHRISTOPHER CUETO, #6192248
Law Office of Christopher Cueto, Ltd.
7110 West Main Street
Belleville, IL 62223
Phone:  (618) 277-1554
Fax:  (618) 277-0962

Robert L. Salim, Bar #11663
Attorney at Law
1901 Texas Street
Natchitoches, LA 71457
Phone: (318) 352-5999
Fax: (318) 352-5998

Jeffrey D. Meyer
Moulton & Meyer, L.L.P.
800 Taft
Houston, Texas 77019
Phone:  (713) 353-6699
Fax:  (713) 353-6698

Ralph D. McBride
Douglas A. Daniels
Kathleen B. Jennings
Bracewell & Giuliani LLP
711 Louisiana Street, Suite 2300
Houston, Texas  77002-2781
Phone:  (713) 223-2300
Fax:  (713) 221-1212

Tommy Fibich
Fibich Hampton & Leebron LLP
1401 McKinney, Suite 1800
Five Houston Center
Houston, TX  77010
Phone:  (713) 751-0025
Fax: (713) 751-0030

F51

William M. Audet
Adel A. Nadji
Audet & Partners, LLP
221 Main Street, Suite 1460
San Francisco, CA  94105
Phone:  (415) 568-2555
Fax:  (415) 568-2556

**ATTORNEYS FOR PLAINTIFFS**

F52

06/27/2011  12:03    6182770962          CLETO LAW OFFICES                    PAGE  03/05

IN THE CIRCUIT COURT
TWENTIETH JUDICIAL CIRCUIT
ST. CLAIR COUNTY, ILLINOIS

| | |
|---|---|
| ██████████ a minor, by STACY BARTOLINI, individually as parent and next friend of ██████ et al., | ) ) ) ) |
| Plaintiffs, | ) |
| v. | ) |
| ABBOTT LABORATORIES, INC., | ) ) |
| Defendant. | ) |

Case No. 10 - L - 651

FILED
ST. CLAIR COUNTY
JUN 2 7 2011
Isabella A. Brice
CIRCUIT CLERK

## ORDER

IT IS ORDERED that Douglas A. Daniels, Robert Salim and Kenneth T. Fibich be admitted to practice *pro hac vice* before the Circuit Court, Twentieth Judicial Circuit of St. Clair County, Illinois, on behalf of the Plaintiffs in this case.

IT IS FURTHER ORDERED that Dino S. Sangiamo and Stephen E. Marshall be admitted to practice *pro hac vice* before the Circuit Court, Twentieth Judicial Circuit of St. Clair County, Illinois, on behalf of the Defendant in this case.

SO ORDERED:

Dated: __6-27-11__                        _____
                                                              JUDGE

JUN 27 2011    2F53

State of Illinois

**IN THE TWENTIETH JUDICIAL CIRCUIT, ST. CLAIR COUNTY, BELLEVILLE, ILLINOIS**

Bartolini

PLAINTIFF

vs.                                        No. 10-L-651

Abbott Laboratories, Inc.

Defendant

FILED
ST. CLAIR COUNTY
JUN 2 8 2011
CIRCUIT CLERK

## ORDER

This cause coming before the Court; the Court being fully advised in the premises and having jurisdiction of the subject matter;

The Court finds: ~~Defendant's motion to transfer venue pursuant to 735 ILCS 5/2-106~~

~~IT IS THEREFORE ORDERED:~~ argued by counsel; the court being advised in the premises, it is ordered that the motion is denied. Defendant granted 30 days from the date of this order in which to further respond to plaintiffs' complaint.

Dated: June 28, 2011

Attorneys:                                        Enter:

..................................
Plaintiff/

R.E. Cope, as to form

..................................
Defendant

..................................
Judge

F54 CC-14-95
FREEBURG PRINTING & PUBLISHING, INC. • 618-539-3320

State of Illinois

## IN THE TWENTIETH JUDICIAL CIRCUIT, ST. CLAIR COUNTY, BELLEVILLE, ILLINOIS

PLAINTIFF
*BARTOLINI*
vs.

No. *10 - L-651*

*ABBOTT LABORATORIES*

Defendant

FILED
ST. CLAIR COUNTY
JUL 1 8 2011
CIRCUIT CLERK

### ORDER

This cause coming before the Court; the Court being fully advised in the premises and having jurisdiction of the subject matter;

The Court finds: .........................................................................................................................................

IT IS THEREFORE ORDERED:

*CASE CONTINUED FOR STATUS*

*CONFERENCE ON OCTOBER 17, 2011 AT 9:00A.M.*

Attorneys:                                          Enter:

.................................................
Plaintiff

.................................................
Defendant

.................................................
Judge

IN THE CIRCUIT COURT
TWENTIETH JUDICIAL CIRCUIT
ST. CLAIR COUNTY, ILLINOIS

████████ a minor, by          )
STACY BARTOLINI, individually )
as parent and next friend     )
of ██████                     )
                              )
        Plaintiffs,           )
                              )
vs.                           )          No. 10-L-651
                              )
ABBOTT LABORATORIES, INC.,    )
                              )
        Defendant.            )

**FILED**
ST. CLAIR COUNTY
JUL 2 0 2011
*Kahelel a Dian*
CIRCUIT CLERK

ORDER

The Motion for Leave of Jason C. Rose to Appear Pro Hac Vice coming before the Court,
and the Court being fully advised in the premises, and upon consent by plaintiffs' attorney, IT IS
HEREBY ORDERED that attorney Jason C. Rose is admitted pro hac vice in this case as
additional counsel for defendant Abbott Laboratories, Inc.

SO ORDERED this __20th__ day of __July__, 2011.

ENTER: _____

IN THE CIRCUIT COURT
TWENTIETH JUDICIAL CIRCUIT
ST. CLAIR COUNTY, ILLINOIS

██████████████ a minor, by         )
STACY BARTOLINI, individually      )
as parent and next friend          )
of █████████                       )
                                   )
          Plaintiffs,              )
                                   )
vs.                                )          No. 10-L-651
                                   )
ABBOTT LABORATORIES, INC.,         )
                                   )
          Defendant.               )

<u>ORDER</u>

The Motion for Leave of Michael B. MacWilliams to Appear Pro Hac Vice coming

before this Court, and the Court being fully advised in the premises, and upon consent by

plaintiffs' attorney, IT IS HEREBY ORDERED that attorney Michael B. MacWilliams is

admitted pro hac vice in this case as additional counsel for defendant Abbott Laboratories, Inc.

SO ORDERED this ___20th___ day of ___September___, 2011.

ENTER: _____

No. 10-L-651
Page 1 of 1

F57

RECEIVED
CLERK APPELLATE COURT
5TH DISTRICT MT. VERNON, IL

JUL 2 5 2011

MAILED _____
OTHER _____

No. 5 - 11 - 0 3 0 9

IN THE
APPELLATE COURT OF ILLINOIS
FIFTH JUDICIAL DISTRICT

██████████, a minor, by STACY )
BARTOLINI, individually and as parent and next )
friend of ██████, AMBERLEY BARNES, )
an incapacitated adult, by LAURA DIANE )
BARNES, individually as parent and next friend )
Of Amberley Barnes; ██████████, a )
Minor, by SAMANTHA BRYANT, individually )
as parent and next friend of ████████ )
████████ a minor, by JENNIFER JANECEK )
Individually as parent and next friend of ████ )
██████████, a minor, by )
MICHAEL GATES, individually as parent and )
next friend of ████████ )
████████, a minor, by KRISTA KAYE )
HOWARD, individually as parent and next friend )
of ██████████ ██████████ a )
minor, by CHARLES H. JACKSON, II, )
individually as parent and next friend of ████ )
██████████, a minor, by KAREN )
KELLY, individually as parent and next friend of )
████████, ██████████, a minor, by )
JARRI LEIGHTON AND CLAY LEIGHTON, )
individually as parents and next friends of ████ )
████ KIMBERLY MANDERY, an )
incapacitated adult, by RENAE DELL MANDERY, )
individually as parent and next friend of Kimberly )
Mandery; ██████████ a minor, by )
WHITNEY L. MIDDLEBROOK, individually as )
Parent and next friend of ████████; )
DIANA MORRISON, an incapacitated adult, by )
HOLLY LYNN RUSSELL, individually as parent )
and next friend of Diana Morrison; ████████ )
████████ a minor, by PATRICIA RODRIGUEZ, )
individually as parent and next friend of ████. )
██████████, a minor, by LAURA )
PARR, individually as parent and next friend of )
████████; CHARLES PEEPLES, an )
incapacitated adult, by RHONDA PEEPLES, )
individually as parent and next friend of Charles )
Peeples; ██████████ a minor, by NANCY )
PROSENCE AND PAUL PROSENCE, individually)

On Petition for Leave
to Appeal from the
Circuit Court for the
Twentieth Judicial
Circuit, St. Clair
County, Illinois

No. 10-L-651

The Honorable
Andrew J. Gleeson
Judge Presiding

**FILED**
JUL 2 5 2011

JOHN J. FLOOD
CLERK APPELLATE COURT, 5™ DIST.

F58

as adoptive parents of ██████████; ██████
██████████, a minor, LISA KAY SCHNARR,
Individually as parent and next friend of ████
██████ ██████████████████ a minor,          )
by RACHEL SPRINGSTEEN AND PAUL               )
SPRINGSTEEN, individually as parent and  next )
friend of ████████                           )
██████████████, a minor, by TOMIKO          )
MOORE, individually as parent and next friend of )
██████████████████; ████████████████a       )
minor, by MELISSA A. WILKINSON,              )
individually as parent and next friend of ████ )
████████████████████N, a                    )
minor, by GLORIA STAMPLEY, individually as   )
parent and  next friend of ██████████        )
████████████████ a minor, by  ANGELA        )
VAUGHN AND SCOTT VAUGHN, individually        )
as parents and next friends of ██████████    )
████████████████ a minor, by KELLY          )
ALLEN, individually as parent and next friend of )
████████, ████████████████ a minor, by      )
SENQUETTA ANCRUM, individually as parent      )
and next friend of ██████████               )
████████, a minor, by HECTOR BAEZA AND      )
GUADALUPE BAEZA, individually as parents     )
and next friends of ██████████████          )
██████████a minor, by GARY R.               )
BARICKMAN AND MARY E. BARICKMAN,             )
individually as parents and next friends of ████ )
██████████████████ a minor, by             )
BETHANY BUCK, individually as parent and next )
friend of ████████████████████, a           )
minor, by IRINA BURNETT, individually as     )
parent and next friend of ████               )
██████████ a minor, by MICHELLE CASSIDY,    )
individually as parent and next friend of ████  )
████████████████ a minor, by CAROLYN        )
PEARSON, individually as parent and next friend )
of ████████, ██████████████, a minor, by   )
TONI FORD AND RANDY FORD, individually       )
as parents and next friends of ██████████;   )
████████████and ██████████minors, by        )
CRYSTAL KIDD, individually as parent and next )
friend of ██████████l and ██████████        )
██████████ a minor, by APRIL HARRIGAN,)      )
individually as parent and next friend of ██████ )

F59

████████████████ a minor, by                  )
SINDY SALGADO, individually as parent and     )
next friend of ████████                       )
████████ a minor, MARTHEE SANSONE,            )
individually as parent and next friend of ████ )
████████████, a minor, by                     )
ANGIE STEVENSON, individually as parent and   )
next friend of ████████████████              )
████████N, a minor, by ROSEMARY R.            )
STOERMANN and ROBERT STOERMANN,               )
individually as parents and next friends of ████ )
████████████; ██                             )
████████, a minor, by CHRISTINA ZUNIGA,       )
individually as parent and next friend of ████████ )
████████                                      )
                                              )
        Plaintiffs,                           )
v.                                            )
                                              )
ABBOTT LABORATORIES, INC.,                    )
                                              )
        Defendant.                            )

---

## PETITION FOR LEAVE TO APPEAL

Richard E. Boyle               Stephen E. Marshall
James R. Garrison              Dino S. Sangiamo
BOYLE BRASHER LLC              Jason C. Rose
5000 West Main Street          VENABLE LLP
Belleville, IL 62223-0560      750 East Pratt Street
(618) 277-9000                 Baltimore, MD  21202
                               (410) 244-7400

ATTORNEYS FOR DEFENDANT, ABBOTT LABORATORIES, INC.

F60

## POINTS AND AUTHORITIES

**PRAYER FOR RELIEF**.................................................................................................. 1

Illinois Supreme Court Rule 306(a)(4) ........................................................................... 1

735 ILCS 5/2-106 ........................................................................................................... 1

**INTRODUCTION**........................................................................................................... 1

735 ILCS 5/2-101 ........................................................................................................... 2

**STATEMENT OF FACTS**.............................................................................................. 2

735 ILCS 5/2-106 ........................................................................................................... 3

**GROUNDS FOR APPEAL** ............................................................................................ 5

Illinois Supreme Court Rule 306(a)(4) ........................................................................... 5

I.      **ILLINOIS' VENUE STATUTE BARS FORUM SHOPPING** ...................... 5

*Bucklew v. G.D. Searle & Co.*, 138 Ill. 2d 282, 562 N.E.2d 186 (1990) ....................... 6, 7

*Gardner v. Int'l Harvester Co.*, 113 Ill. 2d 535, 499 N.E.2d 430 (1986)........................... 6

*Stambaugh v. Int'l Harvester Co.*, 102 Ill. 2d 250, 464 N.E.2d 1011 (1984)..................... 6

*Baltimore & Ohio R.R. Co. v. Mosele*, 67 Ill. 2d 321, 368 N.E.2d 88 (1977) ................ 6, 7

*Rensing v. Merck & Co.*, 367 Ill. App. 3d 1046, 857 N.E.2d 702
      (5th Dist. 2006) ........................................................................................................ 6

*Boxdorfer v. DaimlerChrysler Corp.*, 339 Ill. App. 3d 335, 790 N.E.2d 391
      (5th Dist. 2003) ........................................................................................................ 6

*Peterson v. Monsanto Co.*, 157 Ill. App. 3d 508, 510 N.E.2d 458
      (5th Dist. 1987) ........................................................................................................ 6

735 ILCS 5/2-101 ........................................................................................................... 7

II.     **VENUE IS NOT PROPER IN ST. CLAIR COUNTY** .................................... 7

*Boxdorfer v. DaimlerChrysler Corp.*, 339 Ill. App. 3d at 340-41, 790 N.E.2d at 395
      (5th Dist. 2003) ........................................................................................................ 7

i

A.     Abbott is Not a Resident of St. Clair County ........................................ 8

735 ILCS § 2-102(a) ............................................................................................ 8

*Wilson v. Centr. Illinois Pub. Serv. Co.*, 165 Ill. App. 3d 533, 537,
     519 N.E.2d 44, 47 (5th Dist. 1988) .......................................................... 8

*Long v. Gray*, 306 Ill. App. 3d 445, 449, 714 N.E.2d 1041, 1044
     (1st Dist. 1999) ......................................................................................... 8

        1.     Abbott does not have a registered office or other
             office in St. Clair County ............................................. 8

        2.     Abbott is not "doing business" in St. Clair County ................. 8

*Baltimore & Ohio R.R. Co. v. Mosele*, 67 Ill. 2d at 325-34, 368 N.E.2d at 90-94
     (1977) ............................................................................................ 9, 10, 12, 13

*Remington Rand, Inc. v. Knapp-Monarch Co.*, 139 F. Supp. 613, 617
     (E.D. Pa. 1956) ............................................................................... 9, 13

*Stambaugh v. Int'l Harvester Co.*, 102 Ill. 2d 250, 263, 80 Ill. Dec. 28,
     464 N.E.2d 1011, 1017 (1984) ............................................... 10, 11, 12, 13

*Gardner v. Int'l Harvester Co.*, 113 Ill. 2d 539-42, 499 N.E.2d at 432-33
     (1986)            ............................................................................. 10, 11, 12

*Bucklew v. G.D. Searle & Co.*, 138 Ill. 2d at 291-94, 562 N.E.2d at 190-91
     (1990) ............................................................................................ 11, 12, 13, 14

     B.     The 76 Non-Illinois Plaintiffs and the 8 Illinois but
        Non-St. Clair County Plaintiffs Have Not Asserted Causes
        Of Action Arising Out of Transactions in St. Clair County ............... 14

*Peterson v. Monsanto Co.*, 157 Ill. App. 3d at 511, 510 N.E.2d at 461
     (5th Dist. 1987) ............................................................................... 15, 16

Richard A. Michael & Michael J. Kaufman, Ill. Prac., Civil Pro. Before
     Trial § 11.3 (2d ed. 2009) ............................................................... 15

735 ILCS 5/2-101 ............................................................................................. 16

735 ILCS 5/2-603(b) ........................................................................................ 16

735 ILCS 5/2-613(a) ........................................................................................ 16

F62

**CONCLUSION** ............................................................................................... 17

Illinois Supreme Court Rule 306(a)(4) ............................................................. 17

735 ILCS 5/2-106 ............................................................................................ 17

F63

## **PRAYER FOR RELIEF**

Pursuant to Illinois Supreme Court Rule 306(a)(4), defendant/petitioner, Abbott Laboratories, Inc. ("Abbott"), petitions this Court for leave to appeal the June 28, 2011 order of the Circuit Court of St. Clair County denying Defendant's Motion to Transfer Venue pursuant to 735 ILCS 5/2-106.

## **INTRODUCTION**

This appeal seeks an order to transfer venue in the lawsuit below and three related lawsuits for a total of nearly 300 plaintiffs who have no connection to St. Clair County, and whose claims have no connection to St. Clair County, against a single defendant which is not a resident of St. Clair County. In this suit, and three related suits,[1] a total of 239 Plaintiffs who are not residents of Illinois, and 30 additional Plaintiffs who are not residents of St. Clair County and reside elsewhere in Illinois have brought unrelated, separate and distinct products liability actions against Abbott in St. Clair County. Not one of those 269 Plaintiffs has any connection to St. Clair County. Not one contends that his or her causes of action arise out of any transaction that occurred in the County. Their claims have no connection to St. Clair County whatsoever. Similarly, like each of those 269 non-St. Clair Count Plaintiffs, Abbott is not a resident of St. Clair County. It has no offices, property, facilities, or physical presence in St. Clair County. Only a tiny fraction

---

[1] The Plaintiffs' counsel in this lawsuit also filed the following three complaints in St. Clair County: *Book, et al. v. Abbott Laboratories, Inc.*, Circuit Court Twentieth Judicial Circuit, St. Clair County, Illinois, Case No. 11-L-27; *Brumfield, et al. v. Abbott Laboratories, Inc.*, Circuit Court Twentieth Judicial Circuit, Illinois, Case No. 11-L-143; ▓▓▓*, et al. v. Abbott Laboratories, Inc.*, Circuit Court Twentieth Judicial Circuit, St. Clair County, Illinois, Case No. 10-L-422. Each of these complaints is similar because each joins in one complaint numerous separate and distinct product liability actions brought primarily by non-Illinois and non-St. Clair Plaintiffs against Abbott. Rule 306 Petitions for Leave to Appeal are being filed in each of those lawsuits simultaneously with this Petition.

1

of its sales are to entities located within the County. Like each of these 269 non-St. Clair County Plaintiffs, Abbott has no meaningful connection to St. Clair County.

Illinois law here is clear. Abbott may be sued only in a venue in which (a) Abbott resides or (b) the transaction or a part of the transaction at issue occurred. 735 ILCS 5/2-101. Because no Plaintiff followed this basic rule, and instead 269 Plaintiffs sued Abbott in a venue lacking any connection to Abbott or their claims, the non-St. Clair County Plaintiffs' actions should be transferred to a county of proper venue.

## STATEMENT OF FACTS

On March 28, 2011, 76 non-Illinois residents, 8 Illinois but non-St. Clair County residents, and one set of St. Clair County residents filed a First Amended Complaint in the Circuit Court for St. Clair County asserting products liability claims against Abbott arising from its distribution of the FDA-approved medicine Depakote.[2]  (C71-98). Therefore, 84 of the 86 Plaintiffs are non-St. Clair County residents. Abbott is the lone defendant. *Id.* The 84 non-St. Clair County Plaintiffs consist of children allegedly born with birth defects and their parents or guardians who allege that the birth defects were due to maternal use of Depakote during the first trimester of pregnancy. None of these 84 non-St. Clair County Plaintiffs alleges that he or she (i) was prescribed Depakote in St. Clair County; (ii) purchased Depakote in St. Clair County; (iii) ingested Depakote in St. Clair County; or (iv) sustained any injury in St. Clair County. The Amended Complaint alleges no facts indicating that any transactions at issue in their claims occurred in St. Clair County.

---

[2]  Plaintiffs filed the original Complaint on December 15, 2010. On February 2, 2011, Abbott moved to transfer venue of that action per 735 ILCS 5/2-106.

2

The Amended Complaint named one Plaintiff set which allegedly reside in St. Clair County: ▓▓▓▓and Michael Gates. (C75). The Gates, however, did not claim *any* birth defect injury or damages arising from maternal use of Depakote during the first trimester of pregnancy. *Id.* The Gates' claims thus have nothing in common with the other claims.[3]

Abbott is not a resident of St. Clair County and instead is headquartered and maintains its home office in Lake County, Illinois. (C108-111). On April 27, 2011, within the time allowed to answer the First Amended Complaint, Abbott moved to transfer venue per 735 ILCS 5/2-106 because Abbott is not a resident of St. Clair County and none of the alleged events at issue for the 84 Plaintiffs occurred in St. Clair County. (C100-166). Abbott sought transfer to Lake County, where it is headquartered and has its principal place of business.

In support of its motion for transfer to a proper venue, Abbott filed an affidavit of Charles Santora and verified answers to interrogatories, which set forth the following facts:

> Abbott is a Delaware corporation with its registered agent in Chicago, Illinois and its home office in Abbott Park, Lake County, Illinois. (C108).
>
> Abbott does not own real estate in St. Clair County; does not lease real estate in St. Clair County; does not maintain any offices (including, but not limited to, manufacturing plants, facilities, and operations) in St. Clair County; has no telephone numbers registered to St. Clair County; and does not pay St. Clair County taxes. (C109).
>
> Abbott does not make decisions concerning the design, testing, manufacturing, or labeling of Depakote products in St. Clair County.

---

[3] In addition to the Motion to Transfer Venue pursuant to 735 ILCS 5/2-106, Abbott moved pursuant to 735 ILCS 5/2-615 to dismiss Plaintiffs' Complaint and Amended Complaint for its improper joinder of plaintiffs with separate causes of action and seeking separate recoveries in the same count, thereby violating 735 ILCS 5/2-603(b) and 735 ILCS 5/2-613(a).

3

Decisions regarding the FDA-approved labeling for Depakote products also do not occur in St. Clair County. *Id.*

In 2010, Abbott employed 113 sales representatives in the United States who focused on Depakote products. Only *one* of those 113 sales representatives had a territory that included St. Clair County. That sales representative does not cover St. Clair County exclusively, and during 2010, called upon health care practitioners in St. Clair County only sixteen times. Of the approximately 4,500 sales employees whom Abbott currently employs in the United States, that one sales representative constitutes approximately 0.02% of Abbott's sales employees in the United States. (C109, 157).

During the year 2010, Abbott did not sell *any* Depakote directly to a person or entity located in St. Clair County. (C153). To the extent any Depakote enters St. Clair County it would be as a result of the activities of a third-party other than Abbott. Even those sales, made by entities other than Abbott, represent a negligible fraction of Depakote's overall sales. For example, in 2009, net total sales of Depakote products in the United States were approximately $400,497,321, whereas only $83,608 (or approximately 0.02%) of those sales occurred in St. Clair County. (C63).

Although Abbott did not sell any Depakote directly to a person or entity located in St. Clair County, Abbott did sell a small percentage of its other products to customers in the County. During the year 2010, the gross sales of all Abbott pharmaceutical and medical products directly to customers in St. Clair County were $1,833,567.74, less than 0.013% of Abbott's United States gross sales totaling approximately $14,591,270,000. (C154). If global sales are included – Abbott's products are sold and prescribed throughout the world – the percentages drop to the thousandths.

On June 28, 2011, a hearing was held on the Motion to Transfer Venue in this case, as well as in the *Book* and *Brumfield* cases – two other essentially identical motions to transfer venue in cases with similar complaints against Abbott related to Depakote

4

brought by the same counsel.  The Motion to Transfer Venue in the ███████ case – argued in May – also remained pending.  Like this lawsuit, the *Book, Brumfield* and ███████ lawsuits were brought primarily by non-Illinois residents (163) and Illinois residents with no connection to St. Clair County (22).  Each complaint also included one plaintiff or plaintiff set who allegedly had a connection to St. Clair County.  After argument, the trial court summarily denied all four motions to transfer venue, including the motion filed in this suit.  The court provided no basis for its decision.  (C185; Tr. 12).

## GROUNDS FOR APPEAL

The claims brought by the 76 non-Illinois Plaintiffs and the 8 Illinois Plaintiffs who are not residents of St. Clair County must be transferred because St. Clair County is not a proper venue.  Abbott is not a resident of St. Clair County, and none of the transactions or parts of transactions for those 84 Plaintiffs occurred in St. Clair County. The basic terms of the Illinois venue statute are not satisfied here.

Pursuant to Ill. S. Ct. R. 306(a)(4), Abbott may petition for leave to appeal to this Court from the order of the circuit court denying its motion to transfer.  In light of the obvious forum-shopping at work here, the Court should grant leave to appeal, reverse and order the transfer of the claims of the 84 non-St. Clair County Plaintiffs to a county of proper venue or remand the case to the trial court with an order to transfer.

### I.    Illinois' Venue Statute Bars Forum Shopping.

The Illinois venue statute on its face and as enforced by the Illinois Supreme Court plainly rejects venue in St. Clair County for the claims of the 84 Plaintiffs who either are not Illinois residents or have no connection to the county.  Time and time again, the Illinois Supreme Court has refused to allow out-of-state plaintiffs and plaintiffs with

5

no relation to their chosen Illinois venue – like the Plaintiffs here – to engage in blatant forum shopping. *See Bucklew v. G.D. Searle & Co.*, 138 Ill. 2d 282, 562 N.E.2d 186 (1990) (granting leave to appeal and, based on defendant's lack of residence in St. Clair County and the lack of an underlying transaction occurring in St. Clair County, reversing trial court because statutory requirements for venue had not been met); *Gardner v. Int'l Harvester Co.*, 113 Ill. 2d 535, 499 N.E.2d 430 (1986) (same, despite additional facts showing defendant's business activity in St. Clair County); *Stambaugh v. Int'l Harvester Co.*, 102 Ill. 2d 250, 464 N.E.2d 1011 (1984) (same); *Baltimore & Ohio R.R. Co. v. Mosele*, 67 Ill. 2d 321, 368 N.E.2d 88 (1977) (same: granting extraordinary writ of mandamus and holding that defendant's solicitation of business in Madison County did not meet residency requirement for venue statute); *accord Rensing v. Merck & Co.*, 367 Ill. App. 3d 1046, 857 N.E.2d 702 (5th Dist. 2006); *Boxdorfer v. DaimlerChrysler Corp.*, 339 Ill. App. 3d 335, 790 N.E.2d 391 (5th Dist. 2003); *Peterson v. Monsanto Co.*, 157 Ill. App. 3d 508, 510 N.E.2d 458 (5th Dist.1987) (denying venue where defendant's contacts consisted of soliciting sales and sales of products through dealers). If anything, non-St. Clair County Plaintiffs' and Abbott's connections to St. Clair County here are even more attenuated than the parties' alleged ties to Madison and St. Clair Counties in those cases.

The string of Illinois Supreme Court decisions enforcing the venue statute requirements reflects vital policy interests at play. As the *Bucklew* court explained,

> Proper venue is an important statutory privilege. The limitations stated in the provisions applicable here developed over time to restrict proper venue to places that are convenient either to the defendant or to the potential witnesses. . . . The statutes thus reflect the legislature's view that a party should not be put to the burden of defending an action in a county where the party does not maintain an office or do business and where no part of the transaction complained of occurred.

6

F69

*Bucklew*, 138 Ill. 2d at 288-89, 562 N.E.2d at 189 (internal citation omitted).  In other words, trial courts should not disregard these requirements, as apparently occurred below.

The Illinois general venue statute states in relevant part:

> [E]very action must be commenced (1) in the county of residence of any defendant who is joined in good faith and with probable cause for the purpose of obtaining a judgment against him or her and not solely for the purpose of fixing venue in that county, or (2) in the county in which the transaction or some part thereof occurred out of which the cause of action arose.

735 ILCS 5/2-101.  Thus, for venue to exist, the action must be brought either in the county where the defendant resides or where at least part of the transaction at issue occurred.  The purpose is clear: "The Illinois venue statute is designed to insure that the action will be brought either in a location convenient to the defendant, by providing for venue in the county of residence, or convenient to potential witnesses, by allowing for venue where the cause of action arose." *B&O v. Mosele*, 67 Ill. 2d at 328, 368 N.E.2d at 91.  Defendants such as Abbott "should not be put to the burden of defending an action in a county where [Abbott] does not maintain an office or do business and where no part of the transaction complained of occurred." *Bucklew*, 138 Ill. 2d at 289, 562 N.E.2d at 189.

## II.     Venue is Not Proper in St. Clair County.

As this Court has held, where a venue question involves undisputed facts, the question is a matter of law and not committed to the discretion of the circuit court.  As Plaintiffs did not dispute any of the factual positions asserted by Abbott, the circuit court's ruling thus is reviewed under a *de novo* standard of review without any deference to the lower court. *Boxdorfer*, 339 Ill. App. 3d at 340-41, 790 N.E.2d at 395.

### A.      Abbott is Not a Resident of St. Clair County.

The residency requirement of a corporation for venue purposes is clear: "Any private corporation or railroad . . . authorized to transact business in this State is a resident of any county in which it has its registered office or other office or is doing business."  735 ILCS § 2-102(a).  Whether a corporation is a resident of a county is determined at the time of institution of the suit.  *Wilson v. Centr. Illinois Pub. Serv. Co.*, 165 Ill. App. 3d 533, 537, 519 N.E.2d 44, 47 (5th Dist. 1988) ("venue in 'doing business' cases must likewise be set at the time of institution of the suit."); *Long v. Gray*, 306 Ill. App. 3d 445, 449, 714 N.E.2d 1041, 1044 (1st Dist. 1999) (recognizing that when determining a party's residence for purposes of the venue statute residence "means residence at the time suit was filed rather than when process of service was made or when the incident arose").  Abbott does not meet this requirement.

#### 1.      Abbott does not have a registered office or other office in St. Clair County.

Abbott is not a resident of St. Clair County based on the location of its registered office or other office.  Abbott is a Delaware corporation with its registered agent in Chicago, Illinois and its home office in Abbott Park, Lake County, Illinois.  (C25).  Abbott does not own real estate in St. Clair County; does not lease real estate in St. Clair County; and does not maintain any offices in St. Clair County.  (C26).

#### 2.      Abbott is not "doing business" in St. Clair County.

Whether a defendant is "doing business" for the purpose of the venue statute is a materially different question than whether a defendant has done "any business" in the venue. As stated by the Illinois Supreme Court:

8

> [I]n order to establish that a defendant is doing business within a county for purposes of venue, quantitatively more business activity within the county must be demonstrated than where the question is whether the defendant has transacted any business within the State for purposes of service of process pursuant to Section 17.

*Mosele*, 67 Ill. 2d at 329, 368 N.E.2d at 92. "The defendant must, in short, be conducting its usual and customary business within the county in which venue is sought." *Id.*, 368 N.E.2d at 92. "'[T]he activity must be of such a nature so as to localize the business and make it an operation within the district.'" *Id.* at 329-30, 368 N.E.2d at 92 (quoting *Remington Rand, Inc. v. Knapp-Monarch Co.*, 139 F. Supp. 613, 617 (E.D. Pa. 1956)). Applying that standard, the Illinois Supreme Court consistently has found that defendants having significantly greater contact with a venue than Abbott has with St. Clair County cannot be sued in the venue because the level of contact did not rise to "doing business" within the county as required by the venue statute.

In *B&O v. Mosele*, the Illinois Supreme Court held that the defendant railroad was not doing business for venue purposes in Madison County despite the following facts: (1) "B&O solicited business from Madison County shippers and that the solicitation generated a substantial amount of revenue for the company;" (2) B&O's district sales manager was assigned specific accounts in Madison County and spent approximately three days a month contacting shippers within the county; (3) B&O railroad cars and equipment were used in Madison County by other railroads; (4) B&O trains occasionally would cross the county boundary at a terminal and interchange facility; and (5) B&O owned 6.25% of the stock of the terminal railroad association that frequently passed cars through Madison County and which operated an interchange facility partially located in Madison County. *See id.* at 325-31, 368 N.E.2d at 90-93. In concluding that venue was

9

F72

not proper in Madison County, the Court recognized that "quantitatively more business activity is necessary to establish the defendant's residence in a county for venue purposes than is required where the issue is the defendant's amenability to suit within the State." *Id.* at 333, 368 N.E.2d at 94.

Most important, the Illinois Supreme Court specifically addressed B&O's solicitation of business in the county and rejected it as a basis for establishing venue. Plaintiffs below similarly relied principally on Abbott's relatively de minimis solicitation activity in St. Clair County as the basis for claiming that Abbott was a resident of the county. The record in *Mosele* in fact showed greater solicitation activity than Abbott's negligible activity here. A B&O district sales manager *frequently* solicited business in Madison County (at least three days spent in the county per month, plus supporting telephone calls), resulting in substantial revenue. *Id.* at 332-33, 368 N.E.2d at 93. The Court's holding that, "[f]or venue purposes, mere solicitation of business within a county does not establish venue in that county[,]" *id.* at 333, 368 N.E.2d at 94, is dispositive here. Indeed, as the Court ultimately concluded, "[i]n short, the activities of petitioner's district sales manager amount to no more than solicitation of business and are not sufficient to constitute doing business for venue purposes." *Id.* at 334, 368 N.E.2d at 94.

In *Stambaugh v. Int'l Harvester* and *Gardner v. Int'l Harvester*, the Illinois Supreme Court further demonstrated that scant contacts like Abbott's minimal sales in St. Clair County do not establish residency. The level of business that International Harvester conducted in St. Clair County analyzed in those cases far exceeds any contacts that Abbott has with the county. Specifically, the Illinois Supreme Court found the following activities in St. Clair County to be insufficient as a matter of law to subject

F73

International Harvester to venue in St. Clair County:

> The plaintiff makes the following assertions regarding Harvester's activities in St. Clair County: (1) Harvester sold $ 2.6 million worth of products to dealers in the county; (2) Harvester's sales representatives visit the dealers there; (3) under a cooperative advertising program Harvester will pay half of a dealer's costs of advertisements of Harvester products; (4) purchases of products by St. Clair County dealers are financed by a wholly owned subsidiary of Harvester, International Harvester Credit Corporation; (5) Harvester representatives sell products on their visits to the St. Clair County dealers; (6) during the period from 1979 to 1982, Harvester purchased a total of more than $ 3 million in products from companies located in St. Clair County; (7) Harvester requires the St. Clair County dealers to perform warranty work on Harvester products; (8) Harvester mails rebate checks directly to customers living in St. Clair County or who have purchased Harvester products from dealers there; (9) Harvester operates a retrofit program through the dealers to warn owners about the dangers of the Harvester triple-baffle fuel cap and to replace those caps with new ones; and (10) Harvester accepts sums payable to its financing subsidiary, International Harvester Credit Corporation, which does business in the county.

*Gardner*, 113 Ill. 2d at 539-40, 499 N.E.2d at 432.  Despite all of these contacts, the

Supreme Court concluded "that 'Harvester does not design, manufacture, directly

advertise, finance or sell its products from within St. Clair County' (*Stambaugh v.*

*International Harvester Co.*, (1984), 102 Ill. 2d 250, 263, 80 Ill. Dec. 28, 464 N.E.2d

1011) and that for purposes of venue Harvester is not engaged in its usual and customary

business in that county." *Id.* at 542, 499 N.E.2d at 433. The evidence here does not come

anywhere close to the evidence found insufficient in *Gardner*.

   Most recently, in *Bucklew v. G.D. Searle*, the Illinois Supreme Court again

concluded that venue was not proper in a situation analogous to this suit.  The defendant

Searle employed two sales representatives to call on health care providers in St. Clair

County. 138 Ill. 2d at 291, 562 N.E.2d at 190.  Those sales representatives constituted

less than 0.4% of Searle's national sales force. *Id.*, 562 N.E.2d at 190.  In 1986, when the

11

suit was filed, the defendants sold $289,760 worth of products to customers in St. Clair County, which represented 2.5% of Searle's sales of $11,502,379 in Illinois, and 0.12% of Searle's national sales of $244,760,000 for that year. *Id.* at 292, 562 N.E.2d at 190. Those figures are significantly higher than comparable data for Abbott (St. Clair County accounts for at most 0.02% of the sales force, 0.02% of Depakote sales, and 0.013% of total U.S. sales). In concluding that venue for claims against Searle was not proper in St. Clair County, the Illinois Supreme Court stated that "[t]he solicitation of business by the defendant's sales agents in St. Clair County does not support a finding that the defendants were doing business there" and "the defendant's sales to St. Clair County customers, whether considered in relative or absolute terms, are not so extensive as to warrant a finding that the companies were doing business there." *Id.* at 294, 562 N.E.2d at 191.

Like the defendants in *Mosele*, *Stambaugh*, *Gardner*, and *Bucklew*, Abbott's activity in St. Clair County is not "'of such a nature so as to localize the business and make it an operation within the district.'" *Mosele*, 67 Ill. 2d at 330, 368 N.E.2d at 92 (quoting *Remington Rand*, 139 F. Supp. at 617). Abbott has no physical presence in St. Clair County. (C26). It neither owns nor leases any property in the County, and it maintains no offices or facilities within the County. *Id.* Abbott does not design, develop, manufacture, or distribute its products "from within St. Clair County." *See Stambaugh*, 102 Ill. 2d at 263, 464 N.E.2d at 1017 ("Harvester does not design, manufacture, directly advertise, finance or sell its products *from within* St. Clair County.") (emphasis added).

Abbott's sales representatives and sales within the county constitute its only connection with St. Clair County – connections that consistently have been found insufficient as a matter of law. Abbott employed only one sales representative who

F75

called upon health care providers in St. Clair County, and who focused on Depakote. (C26).  That one employee represented 0.02% of Abbott's national sales representatives, and she did not cover St. Clair County exclusively.  *Id.*  It is axiomatic under Illinois law that, "[f]or venue purposes, mere solicitation of business within a county does not establish venue in that county."  *Mosele*, 67 Ill. 2d at 333, 368 N.E.2d at 94.  As stated by the Illinois Supreme Court, "[t]he solicitation of business by the defendant's sales agents in St. Clair County does not support a finding that the defendants were doing business there."  *Bucklew*, 138 Ill. 2d at 294, 562 N.E.2d at 191.  Consequently, the activities of Abbott's sales representatives cannot be the basis for establishing venue in St. Clair County.

Similarly, Abbott's limited sales in St. Clair County do not constitute activity "'of such a nature so as to localize the business and make it an operation within the district.'"  *Mosele*, 67 Ill. 2d at 330, 368 N.E.2d at 92 (quoting *Remington Rand*, 139 F. Supp. at 617).  During the relevant period, although an Abbott sales representative called upon doctors in St. Clair County (C155), to the extent any Depakote entered the County, it was the result of a third-party distributor other than Abbott.  Such third-party sales cannot be considered Abbott conducting business in the County.  But even if those sales by a third-party distributor were to reflect business activity by Abbott, they represent a tiny fraction (0.02%) of Abbott's overall ·Depakote sales.  (C26).  The sales of Abbott's other pharmaceutical and medical products in St. Clair County – $1.8 million in 2010 – represent less than 0.013% of Abbott's United States sales. (C154).  The $1.8 million in 2010 pales in comparison to International Harvester's $2.6 million in 1976, which was deemed insufficient to establish venue in *Stambaugh*.   Similarly, the percentage of

13

Abbott's sales in St. Clair County (0.013%) is almost ten times less than the percentage of Searles' sales in St. Clair County (0.12%), which also was found insufficient in *Bucklew*. As the Illinois Supreme Court stated in *Bucklew*, "the defendants' sales to St. Clair County customers, whether considered in relative or absolute terms, are not so extensive as to warrant a finding that the companies were doing business there." 138 Ill. 2d at 294, 562 N.E.2d at 191.

> **B.** **The 76 Non-Illinois Plaintiffs and the 8 Illinois but Non-St. Clair County Plaintiffs Have Not Asserted Causes of Action Arising Out of Transactions in St. Clair County.**

Seventy-six Plaintiffs are not residents of Illinois, and 8 Illinois Plaintiffs are not residents of St. Clair County. (C73-87). None of these 84 Plaintiffs asserts a cause of action based on any activity in St. Clair County. (C73-87). Because these 84 Plaintiffs are residents of some 22 different States other than Illinois, or of counties located far from St. Clair County (*e.g.*, Sangamon County for ████Stampley and ████Pearson, Hancock County for ████Russell, and Macoupin County for ████), the record is clear those Plaintiffs were not prescribed Depakote in St. Clair County, did not receive or take Depakote in St. Clair County, and did not sustain any injury in St. Clair County. At no time in this case have those non-St. Clair County Plaintiffs ever suggested, let alone formally alleged, that their causes of action are based on any activity in St. Clair County.

Recognizing this obvious problem, these 84 Plaintiffs have attempted to circumvent the strict requirements of the Illinois venue statute by piggy-backing their actions onto the claims of a single St. Clair County Plaintiff set by joining together all of the actions in one Amended Complaint. Each of the 84 Plaintiffs' actions could not be brought individually in St. Clair County. Plaintiffs claim that because one Plaintiff's

14

action allegedly is based on a St. Clair County transaction, all Plaintiffs' actions can be brought in the same lawsuit in St. Clair County.   The non-St. Clair County Plaintiffs cannot sidestep the clear prohibitions of Illinois' venue statute.   Such a blatant attempt at forum shopping was rejected specifically and emphatically by this Court in *Peterson v. Monsanto*.   As this Court ruled in *Peterson*, each plaintiff must be considered separately for the purpose of determining whether he or she filed an action in a proper venue, even when multiple plaintiffs have joined their actions in one complaint.

In *Peterson*, thirty-two plaintiffs filed a single complaint against an herbicide manufacturer in the Circuit Court of Madison County.   Because the vast majority of the plaintiffs sought recovery for personal injuries that they attributed to their exposure to Monsanto's herbicide outside Madison County, the defendant filed a motion to transfer. On appeal, the Fifth District ruled that, to pursue an action in the Circuit Court of Madison County, *each plaintiff* had to prove that his or her individual action had been properly filed there:

> Thirty-two plaintiffs have joined their actions in separate counts in a single complaint.   While the rules of permissive joinder allow such a procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2-404), for purposes of venue, these counts must be considered separate actions and ***each plaintiff*** must establish that "the transaction or some part thereof" occurred in Madison County ***as to him individually*** when venue is premised on section 2-101(2) of the Act.   (Seé 2 C. Nichols, Illinois Civil Practice, § 917, at 115 (1979)).   Logic dictates, and plaintiffs do not argue otherwise on appeal, that the occurrence of an exposure to the herbicide [at issue] as to one or several plaintiffs in Madison County would not justify the joinder of a plaintiff who was never exposed in Madison County.

*Peterson*, 157 Ill. App. 3d at 511, 510 N.E.2d at 461 (emphasis added); *accord* 3 Richard A. Michael & Michael J. Kaufman, Ill. Prac., Civil Pro. Before Trial § 11.3 (2d ed. 2009) ("Where, under the rules of permissive joinder, many plaintiffs join their actions in

separate counts, and venue is fixed in the forum county solely because one or more of the causes of action occurred in that county, the venue is improper as to every cause of action that did not occur in that county. A motion to transfer those causes of action should be granted.").

The *Peterson* decision is consistent with the plain language of the venue statute, which mandates where "every ***action*** must be commenced . . . ." 735 ILCS 5/2-101 (emphasis added). The focus is on an "action" – not a "complaint" or "suit." An "action" is individual to a particular plaintiff. *See* 735 ILCS 5/2-603(b); *see also* 735 ILCS 5/2-613(a). Thus, the issue is not whether a complaint or suit alleges some transaction in St. Clair County, but rather whether the causes of action asserted by the plaintiffs arose out of transactions that occurred in St. Clair County.

In the proceedings below, the 84 non-St. Clair County Plaintiffs relied on the legal theory that they could piggy-back on the claims of the one St. Clair County resident plaintiff set. That legal theory is plainly incorrect in light of *Peterson*. As they make no factual claim that a transaction, or a part thereof, giving rise to their claims occurred in St. Clair County, the transactional requirement for venue is not satisfied.

The alleged causes of action of the 84 non-St. Clair County Plaintiffs do not arise out of transactions that occurred in St. Clair County. Seventy-six of those Plaintiffs are not even residents of Illinois, and have no connection to St. Clair County. The fact that some other plaintiff set, which alleges a separate cause of action, based on different injuries, may have some alleged connection to St. Clair County does nothing to salvage their claim to venue. Their causes of action simply do not arise out of any activity in St. Clair County. Consequently, venue in St. Clair County is improper as to those 84

Plaintiffs under both requirements of the venue statute.  The circuit court's summary order to the contrary should be reversed.

## CONCLUSION

Pursuant to Illinois Supreme Court Rule 306(a)(4), defendant/petitioner, Abbott Laboratories, Inc., petitions this Court for leave to appeal the June 28, 2011, order of the Circuit Court of St. Clair County denying Defendant's Motion to Transfer Venue pursuant to 735 ILCS 5/2-106.

**ABBOTT LABORATORIES, INC.**

BY: _____
Richard E. Boyle, #00269514
James R. Garrison, # 06184043
BOYLE BRASHER LLC
5000 West Main Street, Box 23560
Belleville, IL  62223-0560
(618) 277-9000 / Fax: (618) 277-4594

Stephen E. Marshall (admitted *pro hac vice*)
Dino S. Sangiamo (admitted *pro hac vice*)
Jason C. Rose (admitted *pro hac vice*)
VENABLE LLP
750 East Pratt Street, Suite 900
Baltimore, MD 21202
(410) 244-7400/Fax: (410) 244-7742

**ATTORNEYS FOR DEFENDANT
ABBOTT LABORATORIES, INC.**

17

F80

## CERTIFICATE OF COMPLIANCE

I certify that this petition conforms to the requirements of Rules 341(a) and (b).

The length of this petition, excluding the appendix, is 17 pages.

James R. Garrison

F82

# APPENDIX

## Table of Contents of Appendix

**Document**                                                                                   **Pages**

Order (June 28, 2011) ................................................................................................A1

Transcript (June 28, 2011) ................................................................................. A2-56

Table of Contents of Supporting Record ........................................................................A57