**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **IN RE DEPAKOTE:** | ) | |
| | ) | |
| **RHEALYN ALEXANDER,** *et al.,* | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 12-CV-52-NJR-SCW** |
| | ) | |
| **ABBOTT LABORATORIES, INC., and** | ) | **LEAD CONSOLIDATED CASE** |
| **ABBVIE, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

On February 8, 2017, Defendants filed several identical motions for summary judgment concerning the expiration of the Indiana statute of repose as to the claims of certain Plaintiffs.[1] *Compare* (Case No. 12-CV-57, Doc. 115) *with* (Case No. 13-CV-1345, Doc. 26). Those Plaintiffs filed uniform responses to the motions on March 10, 2017. *See e.g.,* (Case No. 12-CV-57, Doc. 120); (Case No. 13-CV-1345, Doc. 27). On March 17, 2017, Defendants filed uniform replies. *See e.g.,* (Case No. 12-CV-57, Doc. 127); (Case No. 13-CV-1345, Doc. 30). The motions, responses, and replies are all identical; therefore the Court issues one omnibus Order addressing the issue contained therein. References to the docket in this Memorandum and Order will be to Case No. 12-CV-57, unless otherwise specified.

---

[1]  The summary judgment motions were filed in the following cases: Case No. 12-cv-53; Case No. 12-cv-54; Case No. 12-cv-57; Case No. 12-cv-1091; Case No. 13-cv-134; Case No. 13-cv-1157; Case No. 13-cv-1345; Case No. 14-cv-916.

## Factual and Procedural History

Plaintiffs in this mass action allege that they suffered serious birth defects as a direct result of exposure to Depakote.[2] (Doc. 1-15, pp. 5; 9). The exposure for each Plaintiff is alleged to have occurred *in utero* after his or her biological mother ingested Depakote during pregnancy. (Doc. 1-15, pp. 3-4). Plaintiffs contend that Defendants' failed to warn their biological mothers of the real risk of birth defects, even though Defendants knew or reasonably should have known of the true risks.

The individual claims subject to the instant motion include:   (1) Ginnifer E. and Philip Baugher, individually as parents and next friends of F.B., a minor; (2) Denise Estes, individually as parent and next friend of L.A.E., a minor; (3) Nicky Name (also known as Nicky Ward), individually as parent and next friend of J.W.A., a minor; (4) Laurie Campbell, individually and as parent and natural guardian of M.H., a minor; (5) Kathy Garrett, individually and as next friend of C.T; (6) Angie Stevenson, individually as parent and next friend of D.S., a minor; (7) Sherry Williams, individually and as next friend of T.C., a minor; (8) Linda Burns; and (9) Christopher Doty, individually and as personal representative of the estate of Ryan Doty.[3]

The Court has jurisdiction over the Depakote mass action and all of the individual claims via diversity jurisdiction, including expanded diversity under 28 U.S.C.

---

[2]"Depakote" refers to Abbott's group of prescription drugs with the basic active ingredient valproic acid. Depakote is also sometimes referred to by the chemical names "valproic acid," "valproate," or "divalproex sodium." Depakote is an anti-epilepsy drug ("AED") that has been marketed by Abbott in the United States in some form since 1978.

[3] Defendants originally filed a similar motion for summary judgment concerning Karin Nora Page, individually and as guardian and next friend of D.P., however, they subsequently withdrew the motion in their reply brief. (Doc. 128, p. 3, n.1).

§ 1332(d)(11)(B)(i), also known as the Class Action Fairness Act ("CAFA"). *See* (Doc. 667) (dismissing several Plaintiffs for lack of subject matter jurisdiction, as they failed to properly plead typical diversity jurisdiction or invoke CAFA). Each relevant Plaintiff is a resident of the state of Indiana; Defendants' principal place of business is in Illinois. (Doc. 120, p. 2); (Case No. 12-CV-52, Doc. 37-3, pp. 2-5). Additionally, the prescribing decisions, conception, gestation, and birth all occurred in the state of Indiana. (Doc. 115-2, p. 2); *see also* (Doc. 120, p. 2).

## Discussion

Defendants seek summary judgment on the grounds that the Indiana Product Liability Act's statute of repose extinguishes all of Plaintiffs' claims "that were filed more than ten years after the delivery of the Depakote to which they attribute their claims." (Doc. 115, p. 2).

Federal courts sitting in diversity apply the choice-of-law principles of the forum state to determine which law governs the proceeding. *West Ben Mut. Ins. Co. v. Arbor Homes LLC*, 703 F.3d 1092, 1095 (7th Cir. 2013); *see also Midwest Grain Prods. of Ill., Inc. v. Productization, Inc.*, 228 F.3d 784, 787 (7th Cir. 2000). Illinois only requires a choice-of-law determination "when a difference in law will make a difference in the outcome." *Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 898 (Ill. 2007).

Illinois' statute of repose requires plaintiffs to commence their action within twelve years of the date of the first delivery by a seller, or within ten years from the date of the first delivery to the initial consumer, whichever expires first. 735 Ill. Comp. Stat. 5/13-213(b) (2016). However, subsection (d) of the statute provides for a tolling

exception based on a legal disability, including minority status. 735 Ill. Comp. Stat. 5/13-213(d) (2016).

Conversely, the Indiana statute of repose provides for a ten year window to file a claim, without a tolling exception for those suffering from a legal disability. Ind. Code § 34-20-3-1 (2016). While Indiana provides for a tolling statute, it only applies to the two year statute of limitations and not the ten year statute of repose. Ind. Code § 34-11-6-1 (2016) ("A person who is under legal disabilities when the cause of action accrues may bring the action within two (2) years after the disability is removed."); *see Campbell v. Supervalu, Inc.*, 565 F. Supp. 2d 969, 975 (N.D. Ind. 2008) (explaining Ind. Code § 34-11-6-1 does not toll the statute of repose "because [the statute of repose's] very purpose is to provide the manufacturer or seller with closure for potential liability after a specified number of years.").

There is no dispute that each claim was filed more than ten years after the injured Plaintiffs were born. (Doc. 120, p. 3); (Doc. 115, p. 3). There is also no dispute that under Illinois law the claims continue, while under Indiana law the claims are barred by the statute of repose. Rather, the singular dispute presented to the Court concerns which law to apply.

Illinois applies the "most significant relationship" test to choice-of-law disputes. *Westchester Fire Ins. Co. v. G. Heileman Brewing Co.*, 747 N.E.2d 955, 961 (Ill. 2001); *see also Ingersoll v. Klein*, 262 N.E.2d 593 (Ill. 1970) (adopting the "most significant relationship" test of Restatement (Second) of Conflict of Laws). Courts are not to conduct a singular "one-state-fits-all" approach to the choice-of-law analysis; instead, the Illinois Supreme

Court has declared that courts must engage in *depecage*. *Townsend*, 879 N.E.2d at 901. "[D]*epecage*…refers to the process of cutting up a case into individual issues, each subject to a separate choice-of-law analysis."

Illinois applies "a two-step process in which the court (1) chooses a presumptively applicable law under the appropriate jurisdiction-selecting rule, and (2) tests this choice against the principles of § 6 [Restatement (Second) of Conflict of Laws] in light of relevant contacts identified by . . . § 145 (torts) . . . ." *Townsend*, 879 N.E.2d at 903; *In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proceedings*, 159 F. Supp. 3d 898, 924 (N.D. Ill. 2016).

Turning to the first step, Illinois maintains a "strong presumption that the law of the state where the injury occurred governs in a personal injury case . . . ." *Smith v. I-Flow Corp.*, 753 F. Supp. 2d 744, 747 (N.D. Ill. 2010) (citing *Miller v. Long–Airdox Co.*, 914 F.2d 976, 978 (7th Cir. 1990)); *Kamelgard v. Macura*, 585 F.3d 334, 340-41 (7th Cir. 2009) (explaining "*lex loci delicti*—the law of the place of the wrong" is treated as a presumption).

This Court has previously addressed the challenges associated with determining the "place of injury" in cases involving *in utero* exposure to substances that can cause birth defects:

> Interstate travel further frustrates the ability to determine a place of injury, even when the state of conception is "known." The claim of E.G. (parent Christina Raquel) Case No. 12-cv-55, provides a perfect example of the difficulty in determining place of injury. Ms. Raquel allegedly conceived E.G. in California, however, the primary window for the development of spina bifida occurred in Alabama. Case No. 12-cv-52 (Doc. 469, at p. 6). The specific location where the injury first occurred might be California, Alabama, or any state in-between.

> For the place of injury to be 'known,' and therefore entitled to the initial presumption under Illinois law, a plaintiff must have actual knowledge of the state where conception occurred and be able to certify that she did not leave the state until the injury was discovered. Such 'book-ending' is required in these cases to avoid an arbitrary assignment of the place of injury to when the injury could have started or was actually discovered.

(Case No. 12-CV-52, Doc. 580, p. 4). Here, the parties agree that the conception, entire gestation, and birth all occurred within the borders of Indiana. There is no other state where the injury could have occurred and therefore, the initial "strong presumption" belongs to the state of Indiana.

But determining the place of injury does not end the analysis. *Pittway Corp. v. Lockheed Aircraft Corp.*, 641 F.2d 524, 526–27 (7th Cir. 1981). ("The relative importance of all the alleged contacts, including the place of injury, must be independently evaluated on a case-by-case basis with respect to the particular issue involved, the character of the tort, and the relevant policies of the interested states."). Illinois' strong presumption "may be overcome only by showing a *more* or *greater* significant relationship to another state." *Townsend*, 879 N.E.2d at 903 (emphasis in original).

The second step requires the Court to test the presumption in favor of the application of Indiana law, in light of "the principles set forth in sections 6 and 145 of the Restatement (Second) of Conflicts of Laws." *Smith v. I-Flow Corp.*, 753 F. Supp. 2d at 747 (N.D. Ill. 2010). Section 145(2) of the Restatement lists four "[c]ontacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue . . . :

> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> (c) the domicile, residence, nationality, place of incorporation and place of
>     business of the parties, and

(d) the place where the relationship, if any, between the parties is centered."

*Townsend*, 879 N.E.2d at 901; *Miller v. Long-Airdox Co.*, 914 F.2d 976, 978 (7th Cir. 1990);

*I-Flow Corp.*, 753 F. Supp. 2d at 747 (*citing Townsend*, 879 N.E.2d at 903); *Abbott Labs. v.*

*NutraMax Prod., Inc.*, 844 F. Supp. 443, 446 (N.D. Ill. 1994).

Section 6 of the Restatement provides the following policy considerations:

> (a) [T]he needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relevant interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6, at 10 (1971); *Townsend*, 879 N.E.2d at 900

("These multiple and diverse principles are not listed in any order of priority, and some

of them point in different directions.").

In this case, the Section 145(2) factors weigh heavily in favor of the application of

the Indiana statute of repose. First, Plaintiffs' injuries occurred entirely within the

borders of the state of Indiana, and there is no assertion that the injuries' relationship to

the state was fortuitous. The application of this first factor triggers what the Illinois

Supreme Court in *Townsend* referred to as a "*strong* presumption" in favor of Indiana

law. *Townsend*, 879 N.E.2d at 905 (2007); *Murphy v. Mancari's Chrysler Plymouth, Inc.*, 948

N.E.2d 233, 241 (Ill. App. Ct. 2011).

Determining the place where the conduct causing the injury occurred under the

Restatement is particularly challenging in a failure-to-warn case. At their core, Plaintiffs'

claims revolve around Defendants' failure to warn their biological mothers regarding

the teratogenicity of Depakote. The Restatement does not address the issue of where an omission, i.e., a failure to warn, occurs. Other courts confronted with similar allegations have held that "a failure to warn occurs at the place where the plaintiffs could reasonably have been warned regardless of where the decision not to warn took place." *Jones v. Brush Wellman, Inc.*, No. 1:00 CV 0777, 2000 WL 33727733, at *4 (N.D. Ohio Sept. 13, 2000); *see also Vhora v. Michelin North America, Inc.*, No. 98 C 2657, 1999 WL 63682, at *2 (N.D. Ill. 1999) (finding Illinois was the place of conduct in a failure-to-warn case reasoning plaintiffs first encountered and had opportunity to inspect faulty tires in Illinois); *Yocham v. Novartis Pharm. Corp.*, 736 F. Supp. 2d 875, 882 (D.N.J. 2010) ("The Court previously acknowledged that some of the relevant conduct, research of the drug's safety, did occur in New Jersey. But the more relevant conduct at issue is what Defendant revealed to Plaintiff and her doctor about the drug, conduct which occurred, if at all, in Texas."); *Rowland v. Novartis Pharm. Corp.*, 983 F. Supp. 2d 615, 625 (W.D. Pa. 2013); *Bortell v. Eli Lilly & Co.*, 406 F. Supp. 2d 1, 5 (D.D.C. 2005).

If this Court follows the same rationale provided by these courts, Indiana is the *only* state in which Defendants could have warned the Plaintiffs' mothers. It is not lost on the Court, however, that at least some of the conduct leading to the injuries occurred in Illinois. (Doc. 580, pp. 4-5) ("Depakote is manufactured in Illinois; (2) Illinois is where Abbott has made decisions about the development, testing, manufacturing, labeling, and marketing of Depakote; (3) Illinois is where Abbott's decisions about the FDA-approved labeling of Depakote have also occurred; and (4) virtually all documents regarding the development, testing, manufacturing, labeling, and marketing of Depakote are located

in Illinois, where Abbott is headquartered."). If claims in the complaints were all the Court considered, Plaintiffs *may* have a stronger argument.[4] But Section 145(2)(b) requires the Court to consider "all conduct from any source contributing to the injury," including a defendant's affirmative defenses. *See Townsend*, 879 N.E.2d at 906 (indicating that the Court should consider affirmative defenses including allegations of contributory negligence.)

Defendants' three primary affirmative defenses—(1) the learned intermediary doctrine; (2) assumption of the risk; and (3) comparative or contributory fault—all revolve around conduct that occurred entirely within the state of Indiana. (Doc. 14, pp. 20-28); (Doc. 115, p. 2). What Defendants communicated (or failed to communicate) to the doctors prior to the risk/benefit analysis, what the doctors then communicated to the biological mothers, and what the biological mothers ultimately decided to do with the knowledge they were provided, all occurred within the state of Indiana for these Plaintiffs. (Doc. 115, at p. 2-3). Accordingly, the second factor tips in favor of Indiana.

The third and fourth factors are not patricianly instructive to the Court's decision. The third factor of Section 145(2)—the domicile, residence, nationality, place of incorporation and place of business of the parties—is neutral to the Court's consideration, because Defendants are incorporated in the state of Delaware but

---

[4] In the September 29, 2016 Order, this Court noted that "[a]t their core, Plaintiffs' claims revolve around an alleged failure to warn based on inadequate labeling. The state where Depakote was purchased or the location where the drug was prescribed has a far more attenuated relationship to the core of the torts than the location where labeling, manufacturing, and marketing decisions were made." (Doc. 580, p. 5). In making this assessment, the Court was contemplating a hypothetical scenario where the prescription location, decision to purchase and ingest the drug, and injury location all occurred in separate states. In such a scenario where the conduct connected to the tort was so incredibly diffused among multiple states, Illinois would clearly have the greater interest in the case. However, the conduct leading to the tort in the cases at hand is not diffused across multiple states but is instead concentrated primarily in the state of Indiana.

headquartered in Illinois, while Plaintiffs are residents of the state of Indiana. (Doc. 120, p. 7) ("This third factor is essentially a wash in favor of neither Indiana nor Illinois."). As to the final factor, the relationship, to the extent it existed, was transactional in nature. This factor slightly tips in the direction of Indiana for the same reasons explained under the first and second factors, but it does not carry significant weight.

Despite the "strong presumption" in favor of Indiana, Plaintiffs' assert that the policy considerations under Section 6 demand the application of Illinois law. (Doc. 120, p. 8). The crux of Plaintiffs' argument concerns the state interests and policies behind the Indiana statute of repose and Illinois' tolling exception for minors. There is some merit to Plaintiffs' argument that Indiana's statute of repose was not designed to protect out-of-state manufacturers like Defendants.[5] On the flip side, however, Illinois does not have an interest in protecting out-of-state minors for injuries they suffered in their home states. Indeed states have an interest in compensating their own residents for injuries sustained within the state. *Gregory v. Beazer E.*, 892 N.E.2d 563, 584 (Ill. App. Ct. 2008).

In *Gregory,* the Illinois Court of Appeals faced a similar dispute between the application of the Illinois or Indiana statute of repose. The plaintiff in *Gregory* was diagnosed with mesothelioma which he attributed to work he performed in Indiana and Illinois. The *Gregory* plaintiff asserted that the Illinois statute of repose applied because the Section 145(2) factors gravitated towards Illinois along with the Section 6 policy considerations. Rejecting these arguments, the Illinois Court of Appeals first noted that

---

[5] This argument is subject to debate. *See Bowman v. Niagara Mach. & Tool Works, Inc.*, 832 F.2d 1052, 1056 n.5 (7th Cir. 1987) (explaining Indiana's statute of repose "protects manufacturers both within and without the state of Indiana. [T]he Indiana statute of repose may encourage a higher volume of interstate commerce by sheltering out-of-state manufacturers and shifting injury costs from them to employers, taxpayers and injured persons within Indiana.").

Mr. Gregory primarily worked with Georgia-Pacific products in Indiana, even though there was evidence he performed some remodeling jobs in Illinois. *Id.* at 582. Ultimately, the Court found that only the third factor weighed in favor of the application of Indiana law:

> In sum, we consider the first and second factors a wash, as both the injury and the injury-causing conduct are alleged to have occurred in more than one state (Indiana and Illinois). The fourth factor is irrelevant, since there was no relationship between Larry and Georgia–Pacific or the other defendants. Therefore, this leaves the third factor of domicile which, although the defendants are spread all over the map, directly points to a strong contact with Indiana as Larry's life-long residence and that of his wife, his children and his estate (plaintiff).

*Id.* at 583. The Court concluded that the policy consideration of Illinois in providing a more generous statute of repose were not so pivotal as to outweigh Indiana's most significant relationship. *Id.* at 585.

Here, Plaintiffs' contacts with the State of Indiana are even more significant than those identified in *Gregory*. Plaintiffs attempt to distinguish *Gregory* by noting that Defendants reside in Illinois and therefore the state's policy considerations should control. Such a myopic approach places far too great an emphasis on the policy interest of Illinois, compared to the interest of Indiana. Indeed, to hold for Plaintiffs' position would be to brush aside the fact that the place of injury, the conduct causing the tort, and (to a lesser extent) the relationship between the parties, all revolve around Indiana.

Even the Illinois Supreme Court case heavily cited throughout Plaintiffs' brief leads to the same conclusion. (Doc. 120, at pp. 5, 8, 13) *citing Townsend,* 879 N.E.2d at 909. The Plaintiff in *Townsend* was a resident of the State of Michigan, while the defendant, who sold an alleged faulty lawnmower, had its principal place of business in Illinois.

*Townsend*, 879 N.E.2d at 898. Plaintiff alleged that he was injured by the lawnmower that his father purchased in Michigan when a known design defect allowed his father to back over him while cutting the grass at their Michigan home. *Id.* at 896.

In *Townsend*, the appellate court applied Illinois law to the case through the very policy consideration advanced in the instant cases. *Compare id* at 907 ("Illinois has a strong interest in applying its products liability law to regulate culpable conduct occurring within its borders, induce the design of safer products, and deter future misconduct."); *with* (Doc. 120, pp. 10-11) ("Clearly, Indiana has no interest in having its statute of repose applied, as Depakote is developed, tested, manufactured, labeled, and marketed in Illinois at Abbott's principal place of business.").

In reversing the appellate court, the Illinois Supreme Court cautioned against undervaluing the strong presumption in favor of a state and overvaluing the assigned policy considerations:

> [T]he appellate court not only undervalued the strong presumption in favor of Michigan law, but overemphasized its perception of the interests Illinois and Michigan have in their different concepts of tort damages. Illinois certainly has a legitimate interest in the liability to be imposed on Illinois-based defendants under strict liability or negligence principles. However, Michigan has an equally legitimate interest in the remedies to be afforded its residents who suffer such tort injuries. And if the substantive law of these two states looks in different directions, each state would seem to have an equal interest in having its tort rule applied in the determination of the conflicting issues presented in this case.

*Id.* at 909. Likewise, Plaintiffs in this case undervalue the strong presumption in favor of Indiana law and overemphasize the perception of the interests Illinois and Indiana have in their different concepts concerning the statute of repose. Simply put, though Illinois has an interest in this case, that interest is outweighed by Indiana's strong relationship to

the issue at hand. Indiana law applies to the cases referenced in this Memorandum and Order, and Plaintiffs' claims are barred by the Indiana statute of repose.

**Conclusion**

For the reasons set forth above, Defendants' motions for summary judgment are **GRANTED**, and the Clerk of Court is **DIRECTED** to enter judgment accordingly. This Order is applicable to the claims of: (1) Ginnifer E. and Philip Baugher, individually as parents and next friends of F.B., a minor; (2) Denise Estes, individually as parent and next friend of L.A.E., a minor; (3) Nicky Name (also known as Nicky Ward), individually as parent and next friend of J.W.A., a minor; (4) Laurie Campbell, individually and as parent and natural guardian of M.H., a minor; (5) Kathy Garrett, individually and as next friend of C.T; (6) Angie Stevenson, individually as parent and next friend of D.S., a minor; (7) Sherry Williams, individually and as next friend of T.C., a minor; (8) Linda Burns; and (9) Christopher Doty, individually and as personal representative of the estate of Ryan Doty.

**IT IS SO ORDERED.**

**DATED:   April 11, 2017**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**